EDDIE MARSHALL LYON v. SHELTER RESOURCES CORPORATION, PEACHTREE HOUSING CORPORATION AND GENERAL ELECTRIC CREDIT CORPORATION OF GEORGIA

No. 7814DC375

(Filed 3 April 1979)

1. **Rules of Civil Procedure § 8.2— waiver or release—affirmative defense**
   A defense based on waiver or release is an affirmative defense for which the defendant bears the burden of proof. G.S. 1A-1, Rule 8(c).

2. **Sales § 9; Uniform Commercial Code § 12— action for breach of implied warranties—release of manufacturer—no release of retailer**
   In this action to recover for breach of implied warranties of merchantability and fitness of a mobile home, defendant retailer failed to show that plaintiff's release of the manufacturer operated to release defendant retailer where there was no showing that the manufacturer warranted the mobile home to the retailer and that the retailer passed the *same* warranty on to plaintiff.

3. **Uniform Commercial Code § 25— implied warranties of mobile home—repairs —right to damages**

   Although defects in plaintiff's mobile home were repaired by the manufacturer, plaintiff was entitled to recover against the retailer for breach of implied warranties of merchantability and fitness where plaintiff presented evidence that the repairs did not raise the value of the mobile home to the contract price.

4. **Sales § 9; Uniform Commercial Code § 13— implied warranties of mobile home —payment of loan not waiver**

   Plaintiff did not waive any breach of implied warranties of a mobile home by paying off the loan on the mobile home and releasing the lender, since plaintiff's acceptance of the home obligated her to pay the contract price but did not prohibit her from recovering damages for breach of warranty. Furthermore, plaintiff's action against the lender was based on an allegation of unfair trade practice, and her release of the lender on that claim would not bar plaintiff's action for breach of warranty.

5. **Uniform Commercial Code § 12— express warranty by manufacturer—implied warranties by retailer**

   An express warranty by the manufacturer of a mobile home would not necessarily exclude an implied warranty by the retailer.

6. **Uniform Commercial Code § 26— breach of implied warranties—damages—sufficiency of complaint**

   Plaintiff's complaint was sufficient to support an award of general damages for breach of implied warranties of merchantability and fitness of a mobile home.

7. **Uniform Commercial Code § 26— breach of implied warranties—damages—sufficiency of evidence**

   In an action to recover damages for breach of warranty of a mobile home, plaintiff's evidence was sufficient to show the value of the home if it had been as warranted and the fair market value of the home in its defective condition where plaintiff testified that the contract price was $10,515 and that the home was worth only $6,000 when delivered.

APPEAL by defendant, Shelter Resources Corporation, from *Read, Judge.* Judgment entered 15 December 1977 in District Court, DURHAM County. Heard in the Court of Appeals 1 February 1979.

Plaintiff instituted this suit to recover damages for breach of warranty. On 22 March 1973, plaintiff purchased a 1973 model Peachtree Mobile Home from defendant, Shelter Resources Corporation (Shelter). Shelter was doing business in Wake County as Colony Mobile Homes. Defendant, Peachtree Housing Corporation (Peachtree), manufactured the mobile home purchased by plaintiff.

The purchase price was $10,515.00. Plaintiff paid $600.00 as a down payment and executed a retail installment contract for the remainder. This contract was assigned to defendant, General Electric Credit Corporation of Georgia (GECC).

The mobile home was delivered to plaintiff's lot in March, 1973, but, due to rain, there was some delay in setting it up and bricking it in. Plaintiff alleged that subsequent to the purchase and delivery, she discovered that the windows and doors leaked, they would not close tightly, the heating system was defective, the bathroom tiles were improperly installed, the roof leaked, there were holes in the walls, and several electrical switches would not work. Plaintiff repeatedly requested repairs of Shelter and Peachtree but the home remained in poor condition. Plaintiff stopped making payments to GECC in 1975 and filed this suit in February, 1976. In August, 1976, Peachtree made repairs to the home and plaintiff filed a voluntary dismissal with prejudice as to Peachtree. Plaintiff refinanced the home, paid off GECC in January, 1977, and dismissed her action against GECC. GECC then dismissed a counterclaim for the default payments.

The case proceeded to trial against Shelter on the issues of implied warranty of merchantability and implied warranty of fitness for a particular purpose. Plaintiff's evidence tended to show that she purchased the home in March, 1973. The home was delivered on a rainy day and could not be set up because of the rain. A tractor and a bulldozer were needed to put the home on the lot and the home had to be rocked back and forth to get it in place. It took three weeks to set up the mobile home. On the first rainy day after she had moved in, plaintiff testified that the rain poured in through the vent over the stove, the windows, the doors and the roof. She testified that the heating system did not work properly for two winters. The windows had no screens for two summers. The dryer was vented into the bedrooms. Plaintiff testified that the value of the home when she bought it could not have been more than $6,000.00. She had not had the home appraised.

Plaintiff called Colony about every two to three weeks about these problems. The repairman from the Colony lot came out twelve or thirteen times but the problems were not corrected. When plaintiff could not get Shelter to make repairs, she called

Peachtree. On 10 August 1976, after this suit was filed, Peachtree repaired the kitchen drain, the heating system, the dryer vent, the plumbing, the electrical wiring and other items. It put on new storm doors. Plaintiff valued these repairs at $1,500.00 based on conversations with friends and relatives.

Shelter presented no evidence. The jury found that Shelter had impliedly warranted that the home would be fit for the ordinary purpose and fit for use as a home. They found that Shelter had breached these warranties and, therefore, plaintiff has sustained $3,015.00 in damages. From this verdict, Shelter appealed.

*Powe, Porter, Alphin & Whichard, by Edward L. Embree III, for plaintiff appellee.*

*Sprinkle, Coffield & Stackhouse, by H. Irwin Coffield, Jr., for defendant appellant.*

VAUGHN, Judge.

[1] Shelter first asserts that the repairs made by Peachtree in August, 1976 and plaintiff's release of Peachtree relieves Shelter from liability. Shelter contends that since the defects were repaired, plaintiff has sustained no damages. Furthermore, if plaintiff may recover from Shelter for a breach of warranty, Shelter in turn may recover from Peachtree for any liability to plaintiff. Thus, Shelter argues, the release of Peachtree released Shelter. A defense based on waiver or release is an affirmative defense and, therefore, the defendant bears the burden of proof. Rule 8(c), North Carolina Rules of Civil Procedure; *Price v. Conley,* 21 N.C. App. 326, 204 S.E. 2d 178 (1974). On this issue, Shelter has failed to sustain its burden of proving that the release of Peachtree released Shelter.

[2] In this jurisdiction, in order for a consumer to sue for breach of warranty there must be privity of contract between the plaintiff and the defendant. Generally, therefore, consumers have no cause of action against a manufacturer of a product. *Coffer v. Standard Brands, Inc.,* 30 N.C. App. 134, 226 S.E. 2d 534 (1976); *Byrd v. Star Rubber Co.,* 11 N.C. App. 297, 181 S.E. 2d 227 (1971). *See* Hodge, *Products Liability: the State of the Law in North Carolina,* 8 Wake Forest L. Rev. 481 (1972). Nevertheless, consumers may sue retailers, with whom they have privity, and the

retailers may, in turn, sue the manufacturers on any expressed or implied warranties made to the retailer.

> "Where the retailer purchases personal property from the manufacturer . . . for resale with implied or express warranty of fitness and the retailer resells to the consumer with the *same* warranty and the retailer has been compelled to pay for breach of warranty, he may recover his entire loss from the manufacturer." (Emphasis added.) *Wilson v. Chemical Co.*, 281 N.C. 506, 512, 189 S.E. 2d 221 (1972).

Shelter's liability in this case arises from an alleged breach of the implied warranties of merchantability and fitness for a particular purpose. G.S. 25-2-314 and 25-2-315. Shelter does not contend that these implied warranties have been modified or excluded, pursuant to G.S. 25-2-316 and does not contest the jury's finding that Shelter made these warranties in the sale of the mobile home. Shelter has failed to show, however, that Peachtree warranted the home to Shelter, and that Shelter passed this *same* warranty on to plaintiff. Without a showing that Shelter was secondarily liable, it cannot claim that the release of Peachtree operated to release Shelter.

[3] Although the repairs increased the value of the house, the evidence indicated that they did not raise the market value to the contract price. Plaintiff testified that the value of the repairs was $1,500.00 and that the house was worth $4,515.00 less than what she paid. The jury returned a verdict awarding damages of $3,015.00, the difference between the value of the mobile home and the sale price less the value of the repairs. Despite the repairs, plaintiff's house was still not worth the price she paid and, therefore, she was entitled to recover.

[4] Shelter also claims that plaintiff waived any breach of warranty by paying off the loan and releasing GECC. Plaintiff's acceptance of the mobile home barred her from rejecting it and recovering the purchase price. She was, therefore, obligated to pay the contract price. G.S. 25-2-607(1). Nevertheless, she could still maintain an action for breach of warranty. In *Performance Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E. 2d 161 (1972), the Supreme Court stated that if the buyer "did not reject but accepted the mobile home . . . she is obligated to pay the balance due on the contract price, and she is limited . . . to recovery of

damages for breach of implied warranty of fitness." *Performance Motors, Inc. v. Allen, supra,* at 396. The Court implied, therefore, that even though plaintiff must pay, she may still recover damages for any breach of warranty. This holding comports with decisions in other jurisdictions. *See* 67 Am. Jur. 2d *Sales* § 725 (1973) and cases cited therein.

Furthermore, plaintiff's release of GECC in no way operated to release Shelter. Plaintiff's action against GECC was based on an allegation of unfair trade practice. Plaintiff's release of GECC on that cause of action would not bar plaintiff's action for breach of warranty.

[5]  Plaintiff's evidence was sufficient to establish a cause of action for breach of implied warranties of merchantability and fitness for a particular purpose. Shelter claims, however, that since no implied warranties could run between Peachtree and plaintiff, plaintiff's release of Peachtree must have been based on an express warranty given by Peachtree. Thus, Shelter argues, this express warranty would exclude any implied warranties. We first note that there was no evidence presented to show that the release was based on the existence of an express warranty. Furthermore, G.S. 25-2-317 provides that warranties, express and implied, should be construed as consistent with each other and as cummulative. Thus, if Peachtree had given an express warranty, it would not necessarily exclude an implied warranty given by· Shelter. Shelter's argument, therefore, is groundless.

[6]  Shelter also contends that plaintiff failed to allege damages based on the difference between the value of the home and the value it would have if it had been as warranted. Thus, under plaintiff's allegations, the damages recoverable must be special damages. Shelter argues that since plaintiff has failed to prove special damages, she is not entitled to recover. This argument is without merit. In *Rodd v. Drug Co.,* 30 N.C. App. 564, 228 S.E. 2d 35 (1976), the Court held that plaintiff was entitled to recover general damages for breach of warranty under a general allegation of damages. We find that plaintiff's complaint was sufficient to support an award of general damages.

[7]  Shelter also contends that a directed verdict should have been granted because plaintiff failed to prove damages. For

breach of warranty, plaintiff is entitled to recover the difference between the value of the goods accepted and the value they would have if they had been as warranted, at the time and place of acceptance. G.S. 25-2-714(2). Plaintiff must present evidence tending to show the value of the home if it had been as warranted and the fair market value of the home in its defective condition. *HPS, Inc. v. All Wood Turning Corp.*, 21 N.C. App. 321, 204 S.E. 2d 188 (1974). Plaintiff testified that the contract price was $10,515.00. The contract price will serve as strong evidence of the value of the mobile home as warranted. *HPS, Inc. v. All Wood Turning Corp., supra.* Plaintiff's testimony to the effect that the home was worth $6,000.00 is competent to establish the value of the home in its defective condition. "Unless it affirmatively appears that the owner does not know the market value of his property, it is generally held that he is competent to testify as to its value even though his knowledge on the subject would not qualify him as a witness were he not the owner." *Highway Commission v. Helderman*, 285 N.C. 645, 652, 207 S.E. 2d 720 (1974). The weight to be given the owner's testimony is for the jury to determine. *Highway Commission v. Helderman, supra.* We, therefore, find that plaintiff presented sufficient evidence to establish the value of the home and the damages could easily be calculated from these figures.

We have reviewed all of Shelter's assignments of error. No prejudicial error has been shown.

No error.

Judges HEDRICK and CLARK concur.