MATTIE (FLOSSIE) W. WARREN, Admrx., CTA of the Estate of T. JACK WARREN, Deceased, and HAROLD L. WATSON, T/A FARMERS WAREHOUSE v. GUTTANIT, INC.

No. 823SC971

(Filed 19 June 1984)

1. **Uniform Commercial Code § 14— express and implied warranties as to fitness of roofing materials—properly found**

   A trial court properly found and concluded that defendant expressly and impliedly warranted the fitness of its roofing materials and breached the warranties so made. Further, the trial court's findings of fact, that although defendant's materials were represented as being ideal for protecting plaintiff's building against rainfall, they were not suitable for that purpose, were also amply supported by competent evidence even though there was some evidence that an employee of defendant disclaimed the warranties. G.S. 25-2-313 and G.S. 25-2-316.

2. **Uniform Commercial Code § 24— revocation of acceptance properly found**

   A trial court properly found that plaintiffs revoked the acceptance of roofing materials where the evidence tended to show that plaintiffs were justified in undertaking to revoke their acceptance in that the roof covering provided by defendant did not keep the rain out of plaintiffs' tobacco warehouse, and where the plaintiffs made many justifiable complaints about the leaking roof's defects which defendant recognized by repeatedly trying to rectify them over a period of several months. Formal notice that acceptance was being revoked was not necessary since any conduct by the buyer manifesting to the seller that he is seriously dissatisfied with the goods and expects redress or satisfaction is sufficient. The change that occurred in the roofing materials was inherent in the agreement made, and the court found that the defect was not in the installation, but in the materials themselves. G.S. 25-2-608(2). Finally, under the circumstances revealed by the record, the delays that occurred in bringing this matter to suit were entirely reasonable. G.S. 25-2-608(1)(a) and (b), G.S. 25-2-711(1), and G.S. 25-2-607(4).

3. **Uniform Commercial Code § 26— measure of damages for breach of warranty incorrectly applied**

   The trial court erred in limiting plaintiffs' damages in an action alleging breach of express and implied warranties for roofing materials to the provisions of G.S. 25-2-711 and G.S. 25-2-713. G.S. 25-2-714(2) authorized damages of $81,067.50, which was the difference in value between the materials as warranted and the materials as delivered. G.S. 25-2-714(1) and G.S. 25-2-711, 712, and 715 entitled the plaintiffs to recover the amount paid to the contractor for installing the roofing materials as well as the amount paid by plaintiffs in attempting to repair the defective roof. The amount expended by plaintiffs in having the roofing materials inspected and tested were authorized by G.S. 25-2-711(3), and as "incidental" damages, they were authorized by G.S. 25-2-715(1).

**4. Unfair Competition § 1— finding of no unfair and deceptive trade practice proper**

The trial court properly dismissed plaintiffs' claim that in selling its roofing materials to plaintiffs, defendant engaged in an unfair and deceptive trade practice since breach of warranty alone is not a violation of Chapter 75 of the General Statutes, and since the facts found by the trial judge did not tend to establish allegations that defendant's agents' representations were fraudulently made.

APPEAL by both the plaintiffs and defendant from *Smith, Judge.* Judgment entered 23 July 1982 in Superior Court, PITT County. Heard in the Court of Appeals 23 August 1983.

Sometime before April 23, 1980, plaintiffs, who owned a tobacco warehouse that needed re-roofing, observed an exhibit of defendant's roofing materials and were furnished with defendant's brochure, which stated: "Simply translated, GUTTANIT means 'not a drop of water' or 'weather proof.' GUTTANIT is our brand of corrugated asphalt roofing and siding that has our 25 year warranty against leakage and backs it up." Upon plaintiffs' show of interest in defendant's materials, defendant's Vice President in charge of sales represented to plaintiffs that Guttanit's roofing materials were "suitable" and "ideal" for such a project. Before the sale was made, defendant's agents looked at the roof and told plaintiffs that because of its large size and very gentle slope defendant would not give plaintiffs the warranties and guarantees expressed in the brochure unless the materials were installed by Garry Phillips.

On April 23, 1980, plaintiffs and defendant entered into a contract under which for $81,067.50 defendant agreed to supply plaintiffs with corrugated asphalt roofing sheets and other materials for installation on their roof by Garry Phillips. Since it was a cash transaction, however, a discount was allowed and the amount plaintiffs paid was $79,446.15. Phillips did the roofing job in accord with defendant's instructions and he was paid $25,000 therefor by plaintiffs.

The new roof began to leak during construction and continued to leak until completion June 18, 1980 and thereafter, despite various measures taken first by Garry Phillips, then by defendant, and finally by plaintiffs. Between August 24 and November 4, 1980 plaintiffs expended $29,628.60 for that purpose,

with only partial success, however, as the roof continued to leak, though not quite as profusely. Earlier, during the period when attempts to correct the leaking were being made, defendant sold plaintiffs additional roofing materials priced at $7,011, which plaintiffs have not paid.

On February 3, 1981, defendant's Chairman of the Board personally examined the roof and told plaintiffs it was either too flat or the wrong shape. Several days later, however, he claimed by letter that the roofing materials were installed improperly and that because of that and the slight slope of the roof, which did not allow water to run off properly, the roof could not be made leak-free.

Plaintiffs sued defendant on March 9, 1981, alleging four different claims. The first claim was based on a revocation of acceptance theory and alleged a breach of defendant's express 25 year warranty, as well as an express warranty of fitness for a particular purpose. The second claim, also based on a revocation of acceptance theory, alleged a breach of an implied warranty of fitness for a particular purpose. The third claim, though alleging a breach of the two express warranties stated in the first claim, was based on an acceptance theory, as opposed to revocation of acceptance. The fourth claim, also based on an acceptance theory, alleged again the breach of an implied warranty of fitness for a particular purpose. In its answer, defendant denied all the alleged breaches and counterclaimed for the price of the additional roofing materials later sold to plaintiffs.

Thereafter, plaintiffs paid $8,656.03 for inspections and tests to determine whether the leaking was due to improper installation, as defendant claimed, or because the roofing materials were defective or unsuitable, as plaintiffs claimed, and amended their complaint accordingly. Plaintiffs were also permitted to add a fifth claim for treble damages based on the alleged unfair trade practice of selling the unsuitable roofing materials to them. Apart from the sums expended in putting the roof on and attempting to repair the leaks, plaintiffs claimed as damages $220,553.85, the alleged cost of putting the roof in the condition it would have been had defendant properly performed its contract.

The case was tried without a jury and at the close of plaintiffs' evidence, pursuant to Rule 41(b) of the Rules of Civil Pro-

cedure, defendant moved for a directed verdict as to each of plaintiffs' five claims, and the motion was allowed as to the third, fourth, and fifth claims. The third and fourth claims were dismissed upon findings and conclusions that plaintiffs presented no evidence that they had notified defendant in writing of the breach of express warranty alleged in the third claim and the breach of implied warranty alleged in the fourth claim; the judge also concluded in regard to these claims that by not presenting evidence that defendant was notified in writing of the breaches of warranty that plaintiffs had elected to proceed under their first and second claims based on revocation of acceptance. In dismissing the fifth claim, it was ruled as a matter of law that no unfair or deceptive practices affecting commerce had been shown.

At the close of all evidence, the trial judge made findings of fact substantially in accord with the facts stated above, and also found that: The materials were properly installed by Garry Phillips; defendant's asphalt shingles were not suitable for plaintiffs' roof because its slope was only one-half inch per twelve inches; the roofing materials could not be removed without damaging both the original roof and defendant's newly-affixed materials and if the materials were removed from plaintiffs' roof, they would have no value whatsoever.

The trial court concluded, in substance, that (1) defendant breached its express and implied warranties of fitness for a particular purpose, as well as its express warranty against leakage made on the condition that Garry Phillips do the roofing job; (2) merely installing the roofing materials substantially changed them; and (3) within a reasonable time after the roofing materials were installed plaintiffs revoked their acceptance of the defective materials.

Ruling that plaintiffs' damages were controlled by G.S. 25-2-711 and 25-2-713 of the Uniform Commercial Code, the judge awarded them damages for the $79,446.15 actually paid for the defective materials and the $25,000 paid Garry Phillips for installing the materials. But he ruled that the sums expended unsuccessfully trying to remedy the defective roof and in inspecting and testing the materials were not recoverable. Defendant's counterclaim was dismissed. Both parties appealed.

*James, Hite, Cavendish & Blount, by M. E. Cavendish and Charles R. Hardee, for plaintiff appellants/appellees.*

*Gaylord, Singleton, McNally & Strickland, by Danny D. McNally, for defendant appellee/appellant.*

PHILLIPS, Judge.

The appeals of one party or the other, or both, present the following questions for our determination:

(1) Did the trial court err in concluding that defendant breached its express and implied warranties as to the fitness of its materials for plaintiffs' roof and its express warranty made on condition that Garry Phillips install the materials?

(2) Did the court err in concluding that plaintiffs adequately revoked their acceptance of the roofing materials?

(3) If the acceptance was properly revoked, did the trial court apply the correct measure of damages?

(4) Did the court err in ruling that defendant was not entitled to recover on its counterclaim?

(5) Did the trial court err in concluding as a matter of law that defendant's acts and practices did not amount to "deceptive trade practices" under Chapter 75 of the General Statutes?

We approach these questions from the following base, to which we will return as need requires: Trial by jury having been waived, determining the credibility of the witnesses and weighing their evidence was the duty and prerogative of the trial judge, and his findings of fact, if supported by competent evidence, are binding. *Davison v. Duke University*, 282 N.C. 676, 194 S.E. 2d 761 (1973). Since the judge's finding that defendant's materials were not suitable for roofing plaintiffs' warehouse is abundantly supported by evidence, the rights and duties of the parties no longer depend upon the character of the materials, which has been set at rest, but upon what the parties either said or did about the materials on the different occasions involved and the effect of such deeds and words under Chapter 25 of the General Statutes, otherwise known as the Uniform Commercial Code.

I

### THE WARRANTIES AND THEIR BREACH

[1]  That the trial judge did not err in finding and concluding that the defendant expressly and impliedly warranted the fitness of its roofing materials and breached the warranties so made requires no demonstration. The trial court's findings of fact that though defendant's materials were represented as being ideal for protecting plaintiffs' building against rainfall, they were not suitable for that purpose, are amply supported by competent evidence. G.S. 25-2-313, in pertinent part, states that: "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." That this provision applied to the affirmations of defendant's Vice President that the materials were ideal for the roof of plaintiffs' warehouse cannot be gainsaid, and defendant does not attempt to do so; instead, it contends that the warranties were effectively disclaimed, as G.S. 25-2-316 permits under certain conditions, by one of its employees telling plaintiffs that the 25-year warranty would not be given because the roof was too flat. But this employee's statement was totally inconsistent with the unqualified representations of suitability made by his superior, defendant's Vice President, and that the trier of fact attached more weight to the statement of the latter than he did to the former is understandable. Thus, the judgment of the trial court in this regard is affirmed and the defendant's contentions of error are overruled.

II

### REVOCATION OF ACCEPTANCE

[2]  Since it has been established that defendant breached the express and implied warranties made as to the fitness of its roofing materials, whether plaintiffs preserved their right to damages by properly revoking their earlier acceptance of the materials, manifested by their permitting the materials to be put on their building, is crucial to the case. Because unless their acceptance of the goods was justifiably revoked as G.S. 25-2-711(1) requires, their recovery in the trial court cannot be upheld. The burden of showing this was on the plaintiffs. G.S. 25-2-607(4). In meeting

that burden, as was ruled in *Harrington Manufacturing Co., Inc. v. Logan Tontz Co.*, 40 N.C. App. 496, 253 S.E. 2d 282, *rev. denied*, 297 N.C. 454, 256 S.E. 2d 806 (1979) and *Performance Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E. 2d 161 (1972), plaintiffs were obliged to prove the following:

(1) Because the goods did not conform to the contract their value to them was substantially impaired. G.S. 25-2-608(1).

(2) They either accepted the goods knowing they did not conform, but reasonably assumed that the defects would be cured, G.S. 25-2-608(1)(a), or they accepted the goods without discovering that they did not conform either because discovery before then was difficult or by defendant's assurances that the goods did conform. G.S. 25-2-608(1)(b).

(3) They revoked their acceptance within a reasonable time after they discovered or should have discovered the defect, and notified defendant thereof. G.S. 25-2-608(2).

That the first two requisites were proved and plaintiffs were justified in undertaking to revoke their acceptance is self-evident from the record and the nature of things. Roof covering that does not keep out the rain and cannot be corrected, as the court found, has little or no value to anyone that needs a rainproof roof, as plaintiffs did; and the inability of the materials to keep out the rain could hardly have been known to plaintiff before they were affixed to the roof and the first rainfall occurred. But the defendant's several objections to the other requisite, though all are specious, require more discussion.

First, defendant contends that plaintiffs did not revoke their acceptance of the goods. But the many justifiable complaints that plaintiffs made about the leaking roof's defects, the validity of which defendant recognized by repeatedly trying to rectify them over a period of several months, could hardly be construed otherwise, and the court's conclusion that acceptance was revoked is affirmed. Formal notice that acceptance is being revoked is not necessary; any conduct by the buyer manifesting to the seller that he is seriously dissatisfied with the goods and expects redress or satisfaction is sufficient. In *Performance Motors, Inc. v. Allen, supra*, constant complaints for more than three months,

coupled with a cessation of payments, were held to constitute a sufficient revocation of acceptance by the buyer and sufficient notice thereof to the seller. Furthermore, in this instance, within a month after plaintiffs' last complaint and defendant's acknowledgment that the roof could not be rendered unleakable, any uncertainty that defendant may have had about plaintiffs revoking their acceptance was dispelled by the filing of this action. Another contention is that under G.S. 25-2-608(2), plaintiffs could not revoke their acceptance because there was a substantial change in the goods before revocation was attempted. The change that occurred, however, due to nailing the corrugated asphalt shingles onto plaintiffs' roof and applying caulking compound to them, was inherent in the agreement made; which was not just for the purchase of roofing materials, but for materials that were going to be affixed to plaintiffs' roof by Garry Phillips under the defendant's supervision. Furthermore, G.S. 25-2-608(2), as its terms expressly provide, does not apply to goods that are defective *before* a change occurs, as was the case here; the court's uncontested finding being that the defect was not in the installation, but in the materials.

Finally, defendant contends that plaintiffs' revocation was not timely made. What is a reasonable time within which to revoke an acceptance—like most other questions that involve the reasonable man and his myriad activities—depends on the circumstances of the case and is ordinarily a question of fact for the jury or other fact finder. *Harrington Manufacturing Co., Inc. v. Logan Tontz Co.*, 40 N.C. App. 496, 253 S.E. 2d 282 (1979). Under the circumstances revealed by the record, the delays that occurred in bringing this matter to a head were entirely reasonable in our opinion and the court's conclusion with respect thereto is affirmed. From June, 1980, when the first leak occurred, until February 9, 1981, when defendant's Chairman of the Board admitted that nothing further could be done and the roof would continue to leak, efforts were repeatedly made by defendant to repair it and plaintiff was assured on several different occasions by Garry Phillips, the roofing contractor, and defendant's repairmen that the corrective measures attempted would be successful and the leaks would be eliminated. Obviously, it was in defendant's interest for the roof to be made sound, even if it took several months; and a revocation by plaintiffs when the first leak

occurred, followed by a demand for the return of the purchase money and other damages, if not premature and unwarranted, would certainly have been contrary to the usual practice in such matters. That defendant was accorded the opportunity to rectify the defects and was unable to do so during the several months involved is no proper base upon which to mount a defense. Delays much longer than that evidenced here have been deemed justifiable for similar reasons. *See Gramling v. Baltz,* 253 Ark. 352, 485 S.W. 2d 183 (1972); *Uganski v. Little Giant Crane & Shovel, Inc.,* 35 Mich. App. 88, 192 N.W. 2d 580 (1971).

III

DAMAGES

[3]  The court ruled that the measure of damages to be awarded plaintiffs is governed by the provisions of G.S. 25-2-711 and G.S. 25-2-713. This ruling is not correct. G.S. 25-2-713 has no application to the case, since its very terms limit its application to situations where a seller has repudiated the contract by failing to deliver the goods, and the record shows without conflict that defendant's roofing materials were both delivered and accepted. In listing the statutes deemed to be controlling, G.S. 25-2-713 may have been inadvertently substituted for G.S. 25-2-712. In all events, the parts of G.S. 25-2-711 which set forth the buyer's remedies *in general* when the acceptance of nonconforming goods has been justifiably revoked and certain portions of G.S. 25-2-712 do apply to plaintiffs' damages, but they do not necessarily *govern* their measure, since other portions of the Uniform Commercial Code also apply to the situation recorded. G.S. 25-2-711(1) entitles plaintiffs to recover "so much of the price as has been paid" for the defective materials, "have damages under the next section [G.S. 25-2-712]," and recover "any expenses reasonably incurred in . . . [the] inspection, receipt, transportation, care and custody" of the materials. And G.S. 25-2-712 entitles plaintiffs to "incidental or consequential damages" in accord with G.S. 25-2-715, though no "cover" was made or attempted. But since express and implied warranties were made and breached, G.S. 25-2-714 and G.S. 25-2-715 also affect the damages that plaintiffs are entitled to recover. These statutes provide as follows:

§ 25-2-714. Buyer's damages for breach in regard to accepted goods.—(1) Where the buyer has accepted goods and

given notification (subsection (3) of § 25-2-607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section [§ 25-2-715] may also be recovered.

§ 25-2-715. Buyer's incidental and consequential damages. — (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Thus, the problem, simply put, is whether one or more of these statutes authorized plaintiffs' recovery of the damages that were awarded — the amount paid for the materials and the cost of installing them on the roof — and the damages that were disallowed — the stated price of the materials in lieu of the amount actually paid, and the amounts spent in having the materials tested and in trying to stop the leaks. For, as was pointed out in *Performance Motors, Inc. v. Allen*, 280 N.C. 385, 395-396, 186 S.E. 2d 161, 167 (1972), "[a] buyer who so revokes his acceptance is no

longer required to elect between revocation of acceptance on the one hand and recovery of damages for breach of implied warranty of fitness on the other," but now may recover " 'so much of the [purchase] price as has been paid' plus any incidental and consequential damages . . . [he] is able to prove." The damages authorized by these several statutory provisions that plaintiffs were able to prove, and did prove, in our opinion, were as follows:

### DAMAGES DUE PLAINTIFFS

(1) $81,067.50, which is the difference in value between the materials as warranted and as delivered. Those damages were authorized by G.S. 25-2-714(2) and were proved by the court's findings that the agreed and established price of the materials was $81,067.50 and that the materials when installed on plaintiffs' roof had no value at all. Evidence that the price of the materials was $81,067.50 is strong proof that they were worth that amount when in the condition represented. *Lyon v. Shelter Resources Corp.*, 40 N.C. App. 557, 253 S.E. 2d 277 (1979). That plaintiffs did not pay this amount, but $79,446.15 because of the discount granted for paying cash, is not controlling. The difference in value measure has as much statutory sanction as the amount paid measure, and when warranties have been breached the law's policy is to enforce a full, rather than a restricted, recovery. Thus, the court's conclusion that plaintiffs' recovery on this score was limited to the amount paid was erroneous and upon remand the judgment will be modified accordingly. This award, plainly required by statute, is also in accord with, rather than contrary to, equity, it seems to us. The $1,621.35 difference between the contract price and the amount paid was due to plaintiffs paying defendant in advance and any benefit resulting therefrom rightfully belongs to the plaintiffs, who paid for it, rather than defendant, who did not and has had the use of plaintiffs' money ever since. Nor is our holding contrary to the "so much of the price as has been paid" statement in *Performance Motors, Inc. v. Allen, supra.* For in that case only about a third of the price had been paid and the difference in value measure of G.S. 25-2-714 clearly was not applicable; whereas, in this case the plaintiffs fully paid

for the goods at the outset and the difference in value measure authorized by the statute was clearly the applicable measure, since plaintiffs chose to rely on it.

(2) $25,000, the amount plaintiffs paid to the contractor, Garry Phillips, for installing the roofing materials. These damages were proved by the court's uncontested finding that the agreement of the parties was contingent upon the materials being installed by Garry Phillips and that plaintiffs paid him $25,000 therefor. As a "loss resulting in the ordinary course of events from the seller's breach," their recovery was authorized by G.S. 25-2-714(1) and as "incidental or consequential damages," they were authorized jointly by G.S. 25-2-711, 712, 714 and 715. Thus, the trial court's award of these damages to plaintiffs is affirmed.

(3) $29,628.60, the amount paid out by plaintiffs in attempting to repair the defective roof. These damages were proved by the unexcepted findings that the roof leaked and plaintiffs reasonably expended this amount in attempting to eliminate the leaks, and were authorized by the same statutory provisions referred to in the preceding paragraph. Thus, the denial of these damages to the plaintiffs was error and upon remand the judgment will be modified accordingly.

(4) $8,656.03, the amount expended by plaintiffs in having the roofing materials inspected and tested by Law Engineering Testing Company, Inc. As expenses reasonably incurred in inspection of the goods they were authorized by G.S. 25-2-711(3), and as "incidental" damages they were authorized by G.S. 25-2-715(1). These damages were proved and are recoverable even though the court concluded as a matter of law that the inspection was made solely for the purposes of this litigation. If this conclusion had adequate support in the findings of fact, we would be bound by it, since expenses incurred solely for the purposes of litigation are generally not recoverable as damages either in contract or tort. *Perkins v. American Mutual Fire Insurance Co.*, 4 N.C. App. 466, 167 S.E. 2d 93 (1969). But the court's pertinent finding of fact was that

this amount was expended "to analyze the leaking condition of their warehouse roof with respect to whether or not plaintiffs' warehouse roof was leaking as a result of improper installation as claimed by defendant or due to a defect in the roofing materials or the unsuitability of said roofing materials for plaintiffs' warehouse roof." That the tests made of the materials have been helpful to plaintiffs in the litigation does not alter the facts that the cost of inspections and tests to determine the nature or extent of the goods' defects is clearly recoverable as incidental damages under G.S. 25-2-715(1), and the inspection of the materials was clearly both reasonable and necessary. Before plaintiffs could sensibly determine what to do about their leaking roof, it was necessary to ascertain whether the roof leaked because of the shoddy composition of the materials or because of faulty installation. Therefore, the court's conclusion that these damages are not recoverable is reversed and upon remand the judgment must be modified accordingly.

Thus, the amount the plaintiffs are entitled to recover of the defendant is $144,352.13, itemized above, rather than $100,515.40, as provided in the judgment appealed from; and upon remand the judgment will be modified accordingly.

IV

DEFENDANT'S COUNTERCLAIM

Defendant contends that if plaintiffs justifiably revoked their acceptance of the defective roofing materials, it necessarily follows that it is entitled to an offset of $7,011 for additional roofing materials furnished plaintiffs, which they have not paid for. We disagree. Any vitality that defendant's counterclaim had was snuffed out by the finding of fact, supported by competent evidence, that defendant's Vice President, Gagnon, after concluding that the leaks in the roof could not be eliminated, refused to accept payment of the $7,011 and said that the cost of those replacement materials would be included in what plaintiffs paid for at the beginning. The court's conclusion that the counterclaim is without merit necessarily followed therefrom.

## V

### PLAINTIFFS' CLAIM FOR UNFAIR
### AND DECEPTIVE TRADE PRACTICES

[4]  We find no error in the court's involuntary dismissal of plaintiffs' fifth claim that in selling its roofing materials to plaintiffs, defendants violated Chapter 75 of the General Statutes, otherwise known as Unfair and Deceptive Trade Practices Act. Breach of warranty alone is not a violation of Chapter 75. *Stone v. Paradise Park Homes, Inc.*, 37 N.C. App. 97, 245 S.E. 2d 801, *rev. denied*, 295 N.C. 653, 248 S.E. 2d 257 (1978). The thrust of plaintiffs' claim was that the representations of defendant's agents concerning its products were fraudulently made, but the facts found by the trial judge do not tend to establish those allegations.

As to defendant's appeal, affirmed.

As to plaintiffs' appeal, affirmed in part; reversed in part; and remanded for entry of judgment in accordance with this opinion.

Judges HEDRICK and WELLS concur.