MARGIE T. WHITEHURST, EXECUTRIX OF THE ESTATE OF NORMAN L. WHITE-HURST, AND MARGIE T. WHITEHURST, INDIVIDUALLY v. CRISP R.V. CENTER, INC., A. L. CRISP AND FINANCE AMERICA, INC.

No. 873SC19

(Filed 4 August 1987)

1. **Uniform Commercial Code § 24— defective engine in motor home—warranty of fitness—revocation of acceptance**

    Plaintiffs revoked their acceptance of a motor home within a reasonable time where all the evidence showed that, two days after plaintiffs learned that the engine was defective and only thirty-two days after they bought the motor home, their attorney wrote defendants a letter stating that plaintiffs were returning the vehicle to defendants and rescinding the purchase because the engine was seriously defective, and a contrary jury verdict must be set aside and a new trial ordered. However, where all the evidence supported the jury finding that defendants made and breached an implied warranty of fitness of the motor home for a particular purpose, the new trial will be restricted to the issue of whether plaintiffs withdrew their revocation of acceptance and to the issue of damages. N.C.G.S. §§ 25-2-607(3)(a) and 25-2-608(2).

2. **Unfair Competition § 1— defective engine in motor home—no unfair trade practice**

    Evidence that defendants breached an implied warranty of fitness by selling a motor home with a defective engine that had to be replaced was insufficient to establish an unfair and deceptive trade practice under N.C.G.S. § 75-1 *et seq.*

    Chief Judge HEDRICK concurring in part and dissenting in part.

APPEAL by plaintiffs and cross appeal by defendants from *Small, Judge.* Judgment entered 17 July 1986 in Superior Court, CARTERET County. Heard in the Court of Appeals 3 June 1987.

Norman L. Whitehurst and wife, Margie T. Whitehurst, sued the defendants Crisp to revoke the purchase of a Coachman Camper and to recover for breach of warranties and unfair and deceptive trade practices in connection therewith. In the suit they also sought to enjoin defendant Finance America, Inc. from enforcing a security device it held on the vehicle, but that defendant has been eliminated from the case by stipulation. Before trial Norman L. Whitehurst died and the executrix of his estate was substituted as plaintiff in his stead. At trial the jury found that in selling the motor home defendants Crisp had breached the implied warranty of fitness for a particular purpose and plaintiffs had not notified defendants of their revocation of acceptance

within a reasonable time after discovering the breach. Under the court's instructions this verdict ended the case and judgment was entered accordingly.

The evidence at trial relating to plaintiffs' appeal and defendants' cross appeal indicated that: On 27 July 1984 the Whitehursts purchased a new 26-foot Coachman Camper from defendant Crisp R.V. Center, Inc. in Chocowinity for $33,208. They paid for the camper by trading in their truck and trailer for $8,112 and by financing the balance with defendant Finance America, Inc. over a ten-year period at 15% interest. The vehicle, an apartment on wheels, was pulled by a Chevrolet truck engine that General Motors warranted and the corporate defendant stood behind. In driving the vehicle to their home, about 70 miles away, to Morehead City and back three days later, and back to the dealership on 16 August 1984, a total distance of approximately 225 miles, plaintiffs noticed nothing wrong with the way the vehicle's engine performed. On 16 August 1984 the vehicle was left with defendants for some minor adjustments and repairs not involving the truck engine, and Mr. Whitehurst picked up the repaired camper on 28 August 1984. On the trip home the engine began making noises and "missing and cutting out" so badly that it took about three hours to travel the 70 miles involved. Upon arriving home Whitehurst immediately telephoned defendant Crisp, President of the corporate defendant, told him of the problems with the truck engine, and demanded that defendants take the camper back and give them a new one. Defendant Crisp told him to have the engine examined by a Chevrolet dealer, as such dealers were the only ones authorized to do warranty work on Chevrolet engines, and that whatever was required to meet the engine warranty would be done. Two days later, on 30 August 1984, Whitehurst drove the vehicle to a Chevrolet dealership in New Bern, where a mechanic listened to the engine and advised him that while he could not be sure without dismantling the engine that it probably had a defective piston and would take two weeks to repair. Whitehurst then drove the camper back home and engaged an attorney, who notified defendants by letter mailed that same day that plaintiffs were returning the vehicle to them and rescinding the purchase because the engine was seriously defective. The letter also told defendants of the difficulties plaintiffs had had with the engine and what the mechanic said about it, and

that in settlement plaintiffs would accept either a new camper or the return of their purchase money and trade in. Five days later, on 4 September 1984, the vehicle was left at defendants' place of business and its keys given to an employee. On 7 September 1984 defendants' counsel wrote plaintiffs' counsel and asked that before the Whitehursts rescinded the contract and began litigation that the engine be inspected by a Chevrolet mechanic and defendants be advised whether the Whitehursts would accept a new engine if the inspection showed that the engine was seriously defective, or would accept the repair of the engine if the inspection showed that the defects were minor and repairable. In responding to this letter on 14 September 1984, plaintiffs' lawyer did not state whether plaintiffs would or would not accept a new engine or the repair of the old one as the inspection showed was appropriate, but did state that the engine should be thoroughly inspected "to determine exactly what the problem is" and stated that the Whitehursts preferred for the inspection to be made by Smith, the head mechanic at Tryon Chevrolet in New Bern, rather than by a Morehead City Chevrolet dealer defendants suggested. On 17 September 1984 defendants took the camper to Tryon Chevrolet and asked that the knock in the engine be checked and the defect corrected; but Tryon would not begin the inspection, which involved dismantling the engine, until one of the plaintiffs authorized them to do so, and a day or two later Norman Whitehurst authorized the inspection. After the inspection was completed General Motors decided that the engine was not repairable and authorized Tryon to replace it with a new engine under the warranty. The new engine was not received from General Motors until several weeks later, however, and before it was received defendant Crisp telephoned Tryon Chevrolet several times about it; and upon finally ascertaining from Tryon's mechanic Smith sometime in November that the engine had been received and installed, Crisp asked him if he had notified plaintiffs that the vehicle was ready and Smith said he had notified plaintiffs' lawyer, who happened to be in the garage getting his own vehicle repaired a few days after the new engine was put in plaintiffs' vehicle. There was no further communication between the parties or their lawyers, according to the evidence, until plaintiffs filed suit on 7 December 1984.

*Bennett, McConkey, Thompson, Marquardt & Wallace, by Thomas S. Bennett, for plaintiff appellants-appellees.*

*William B. Cherry and Wheatly, Wheatly, Nobles & Weeks, by C. R. Wheatly, III, for defendant appellees-appellants.*

PHILLIPS, Judge.

[1] The trial ended prematurely and the case must be tried again, because the verdict is contrary to the evidence of both parties and is supported by the evidence of neither. The evidence presented during the trial contains few contradictions and raises only two main issues of fact—whether after revoking their acceptance of the camper plaintiffs later withdrew their revocation, and whether plaintiffs are entitled to recover either actual or incidental damages of defendants—and it is both incongruous and erroneous that the trial ended before any of the matters really in dispute were determined. For defendants' evidence, as well as plaintiffs', shows clearly, unambiguously and without contradiction that plaintiffs revoked their acceptance of the camper within a reasonable time after learning the engine was defective, and the verdict to the contrary should have been set aside, as plaintiffs moved. Leaving aside plaintiffs' evidence, in pertinent part *defendants'* evidence relating to their breach of warranty and plaintiffs' revocation of the purchase was that: On 27 July 1984 the Whitehursts bought a new Coachman Camper from defendants for $33,208; Coachman Campers are made to live in while traveling from place to place and defendants knew that plaintiffs bought the camper for that purpose; the vehicle had a new Chevrolet truck motor, which General Motors warranted and the corporate defendant stood behind; on 28 August 1984, just 32 days after defendants sold the vehicle, plaintiff Norman Whitehurst complained to defendant Crisp about the motor not running properly and being defective and demanded at that time that the sale be cancelled; defendant Crisp told Whitehurst the problem with the engine might be minor and correctable and that he should have the engine examined by a Chevrolet dealer qualified to do warranty work on Chevrolet engines and if the engine was not up to the warranty it would be corrected; two days later plaintiffs had the engine so examined, at least to some extent, and that very day plaintiffs' lawyer notified defendants in writing that the purchase was being rescinded and the vehicle returned to defend-

ants' place of business because, according to the mechanic that examined it, the vehicle engine was seriously defective. Upon receiving this letter defendants had their lawyer write plaintiffs' lawyer for permission to have the engine more thoroughly inspected by a Chevrolet approved mechanic and had their lawyer to find out, if he could, whether plaintiffs would accept a new engine if the inspection showed that the one in it was not repairable, and would accept the repair of the engine if the inspection revealed that the defects were minor and repairable; defendants received permission to have the motor inspected and after the motor was dismantled and thoroughly inspected General Motors, the maker of the warranty, recognized that the engine was not repairable and had it replaced by a new engine under the warranty.

The foregoing evidence, which is neither ambiguous nor contradicted by other evidence, clearly establishes as a matter of law that plaintiffs revoked their acceptance of the camper in a timely and effective manner in full compliance with our law. Leaving aside the evidence of plaintiffs' attempt to revoke the purchase on 28 August 1984 when the motor first failed to perform satisfactorily, this evidence shows that plaintiffs' revocation was initiated no later than 30 August 1984, only two days after plaintiffs first learned that the engine might be defective; for it was on that day that their lawyer wrote defendants that the sale was being rescinded and the camper was being returned to them. And it is equally clear that the revocation was completed a day or two later when defendants admittedly received the letter. G.S. 25-2-608(2). Although whether the acceptance of a purchase has been timely revoked under the Uniform Commercial Code is usually a question of fact, when the facts are undisputed and only one inference can be drawn from them it is a question of law for the court. *Maybank v. Kresge Co.*, 302 N.C. 129, 134, 273 S.E. 2d 681, 684 (1981); *see also, Adler v. United States*, 270 F. 2d 715 (8th Cir. 1959). Returning the vehicle purchased to the defendants, notifying them in writing that the purchase was rescinded because the motor was defective, and demanding the delivery of a new vehicle or the return of the purchase price can only be construed as being a revocation of acceptance, in compliance with G.S. 25-2-608. And mailing the written notification of revocation to the seller within two days after the engine first failed to perform satisfactorily and

on the very day that the purchasers were advised by a Chevrolet mechanic that the engine defect was serious can only be construed as notice made within a reasonable time under the provisions of G.S. 25-2-607(3)(a) and G.S. 25-2-608(2). That the jury found otherwise was due to the confusing and inconsistent instructions that they received from the court, as the record plainly shows. Instead of peremptorily charging the jury on this issue, or even charging on the issue separately, the court intertwined its instructions with instructions concerning whether plaintiffs withdrew their revocation and in doing so charged on a multitude of alternatives to the resultant confusion of the jury, as their requests for clarification attest. One alternative erroneously charged on by the court was that plaintiffs' acceptance of the vehicle might have been revoked by filing suit, which was more than three months after the camper was returned to the seller and defendants were notified in writing that the purchase had been rescinded.

[2]   In vacating the judgment and remanding for a new trial we do not set aside the finding that defendants made and breached the implied warranty of fitness, however, for the same undisputed, unambiguous evidence referred to above also establishes as a matter of law that defendants made and breached that warranty. G.S. 25-2-315. For it is a matter of common knowledge that the motor in a new motor vehicle is of substantial importance to the value and utility of such a vehicle and the uncontroverted evidence shows that: The motor in the vehicle plaintiffs purchased was warranted as a new motor; barely a month after the purchase the motor failed to perform like a new motor and the seller and warranter after inspecting it had the motor taken out and replaced. Nor do we order a new trial on plaintiffs' unfair and deceptive trade practices claim, not reached by the jury, because the evidence presented does not support that claim. The evidence presented, even when viewed in the most favorable light for the plaintiffs, as our law requires, only shows that in selling a motor vehicle with a motor that was defective and had to be replaced defendants breached an implied warranty of fitness, and that is not enough to establish an unfair and deceptive trade practice under G.S. 75-1, *et seq. Warren v. Guttanit, Inc.*, 69 N.C. App. 103, 317 S.E. 2d 5 (1984). Since it has been judicially established by the evidence of the parties that defendants made and breached

Whitehurst v. Crisp R.V. Center

an implied warranty of fitness for a particular purpose, and that plaintiffs revoked their acceptance of the motor vehicle in a timely and effective fashion, the new trial will be only on issues concerning defendants' allegation that plaintiffs withdrew their revocation of acceptance and on plaintiffs' allegations that they are entitled to recover actual and incidental damages. In the trial of these issues statutes that should be consulted include G.S. 25-2-711(1), G.S. 25-2-714 and G.S. 25-2-715; and the decisions that should be consulted include *Davis v. Colonial Mobile Homes*, 28 N.C. App. 13, 220 S.E. 2d 802 (1975), *disc. rev. denied*, 289 N.C. 613, 223 S.E. 2d 391 (1976) and the cases therein cited.

We overrule plaintiffs' several other contentions without discussion because they are not based upon exceptions properly taken and assignments of error properly made as sections (b) and (c) of Appellate Rule 10 require; and we overrule defendants' cross appeal without discussion because the arguments made in support thereof are not based upon any assignments of error, as Rule 28(b)(5) of the appellate rules requires.

Vacated and remanded.

Judge ORR concurs.

Chief Judge HEDRICK concurs in part and dissents in part.

Chief Judge HEDRICK concurring in part and dissenting in part.

I agree with the majority opinion that the plaintiffs are entitled to a new trial. In my opinion, however, the next trial should embrace all issues raised by the pleadings and the evidence presented at the new trial. I do not agree with the majority's efforts to restrict the new trial to the issue of whether plaintiffs withdrew the revocation of acceptance and to the issue of damages.