BUSINESS COMMUNICATIONS, INC., PLAINTIFF v. KI NETWORKS, INC., DEFENDANT

No. COA02-1014

(Filed 20 May 2003)

## 1. Sales— goods—rejection—revocation

The trial court did not err by granting summary judgment under N.C.G.S. § 1A-1, Rule 56 in favor of plaintiff for recovery of the unpaid purchase price arising out of a contract for the sale of telephone system equipment, because: (1) defendant failed to effectively reject the goods under N.C.G.S. § 25-2-606 within the three-week time period agreed by the parties; (2) although the time allowed for revocation generally should be extended where the parties have attempted adjustment, in the instant case defendant failed to take the necessary steps to revoke within a reasonable time when it delayed for over three months before informing plaintiff that it was experiencing problems and even then refused altogether to describe what those problems were; and (3) although defendant need not have provided plaintiff with a detailed explanation of defects, more is necessary under N.C.G.S. § 25-2-608 than a mere notification of nonconformity.

## 2. Pleadings— amendment to answer—counterclaims

The Court of Appeals was not required under N.C.G.S. § 1A-1, Rule 13(f) to deem defendant's answer amended to include its proposed counterclaims when defendant at no time requested leave to file a counterclaim at the trial level.

Appeal by defendant from order entered 4 March 2002 by Judge Anthony Brannon in Forsyth County Superior Court. Heard in the Court of Appeals 17 April 2003.

*Hendrick & Bryant, L.L.P., by Matthew H. Bryant and Timothy Nerhood, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Charles A. Burke and Christopher G. Daniel, for defendant-appellant.*

LEVINSON, Judge.

## I. BACKGROUND

On 18 August 2000, plaintiff and defendant entered into a contract for the sale of telephone system equipment (the "Equipment") for

$13,265.00 (the "Contract"). Under the terms of the Contract, defendant was to pay "20% of the above total sales price as a deposit upon the signing of [the Contract], 70% of total sales price upon delivery of the equipment and 10% upon acceptance of installation." Additionally, the following provisions were included:

> BCI installation, programming, training, cutover, design & layout labor price due with signed copy of this agreement. That amount is $2,396.53. This dollar amount is unreturnable.

> The remaining balance ($10,868.47) is due upon final acceptance of product 3 weeks after install date. Product may be returned w/in 3 weeks of install date at no additional charge.

The Equipment was installed on 8 February 2001. In his affidavit James Corrigan, defendant's president, claims the day after installation he forwarded an email to plaintiff describing nine (9) "areas that the system fell short of the requirements that [defendant] set forth to [plaintiff] during the negotiations." He further claims that although some of those initial problems were fixed, beginning 6 March 2001 defendant became aware of new problems.

On 25 May 2001, plaintiff's counsel wrote to defendant demanding payment of the unpaid purchase price of the Equipment. Defendant paid the initial 20% payment but did not make any further payments. Although not included in the record on appeal, defendant apparently wrote plaintiff on 9 June 2001 claiming defendant was experiencing difficulties with the Equipment. In a letter dated 18 June 2001, plaintiff requested a list detailing any non-conformities in the goods. In a return letter written 20 June 2001, defendant acknowledged receipt of plaintiff's 18 June 2001 letter and assured plaintiff that it would prepare a list of difficulties that it was experiencing with the Equipment. On 11 July 2001, without having received an explanation as to how the Equipment was non-conforming, plaintiff wrote another letter to defendant demanding payment and requesting a list of any difficulties. Defendant responded that it would forward plaintiff a letter detailing any problems with the Equipment by 3 August 2001. Without having received plaintiff's promised letter, on 20 August 2001, plaintiff again wrote defendant demanding payment and an explanation of any difficulties it was having with the Equipment. On 5 September 2001, without ever having received from defendant an explanation as to how the Equipment was non-conforming, plaintiff filed this action against defendant praying for recovery of the unpaid purchase price.

BUSINESS COMMUNICATIONS, INC. v. KI NETWORKS, INC.

[157 N.C. App. 710 (2003)]

Subsequently, plaintiff moved for summary judgment, and on 4 March 2002, the trial court granted plaintiff's motion. Defendant appeals, contending it rejected the goods under N.C.G.S. § 25-2-602 (2001), or in the alternative, if it accepted the goods, it effectively revoked acceptance, N.C.G.S. § 25-2-608 (2001).

---

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001).

> The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact. This burden may be met "by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim." Once the moving party satisfies these tests, the burden shifts to the nonmoving party to "produce a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial." The trial judge must consider all the presented evidence "in a light most favorable to the nonmoving party," and "all inferences of fact must be drawn against the movant and in favor of the nonmovant." In addition, because summary judgment is " 'a somewhat drastic remedy, it must be used with due regard to its purposes and a cautious observance of its requirements in order that no person shall be deprived of a trial on a genuine disputed factual·issue.' "

*DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681-82, 565 S.E.2d 140, 146 (2002) (citations omitted).

## II. REJECTION

[1] Defendant contends there are genuine issues of material fact as to whether it rejected the Equipment. Generally, to make an effective rejection of goods, a buyer must (1) reject the goods within a reasonable time after delivery, and (2) seasonably notify the seller of the rejection. G.S. § 25-2-602(1). However, parties may contract to limit the time for rejection, provided the limits set allow the buyer a rea-

sonable time for discovery of defects.[1] *Id.* (see official comment 1); *see also* N.C.G.S. § 25-1-102 (2001) (allowing the provisions of Chapter 25 to be varied by agreement, except as otherwise provided); N.C.G.S. § 25-1-204 (2001). If a buyer fails to make an effective rejection, he is deemed to have accepted the goods. N.C.G.S. § 25-2-606 (2001).

Here, the Contract explicitly states the unpaid balance of the purchase price is "due upon final acceptance of [the] product 3 weeks after install date. Product may be returned w/in 3 weeks of install date at no additional charge." The clear import of this provision is to not only limit defendant to a three week period in which to reject the goods but also provide defendant a fixed three week window during which it could reject the goods. Because the Equipment was installed on 8 February 2001 and defendant does not allege it rejected the goods until July 2001, defendant failed to reject within the time agreed by the parties.[2] Therefore, defendant failed to make an effective rejection and, as a result, accepted the Equipment. *See* G.S. § 25-2-606.

## III. REVOCATION

In the alternative, defendant contends it revoked its acceptance of the Equipment. A buyer may revoke acceptance if: (1) the goods are non-conforming and the non-conformity substantially impairs the goods' value to him; (2) the buyer accepted the goods under the premise that he (a) knew the goods were non-conforming but reasonably assumed they would be cured or (b) did not know of the nonconformity due to difficulty of discovery; (3) the buyer revoked within a reasonable time after he discovered or should have discovered the defects; and (4) the buyer seasonably notified the seller of his revocation. N.C.G.S. § 25-2-608 (2001); *Manufacturing Co. v. Logan Tontz Co.*, 40 N.C. App. 496, 253 S.E.2d 282, *cert. denied*, 297 N.C. 454, 256 S.E.2d 806 (1979).

---

1. Defendant contends it discovered problems with the Equipment approximately one day after installation, and it does not contend it had inadequate time in which to discover defects. Therefore, we do not consider whether the agreed upon time for rejection provided defendant with a reasonable time to discover defects in the Equipment.

2. Defendant's president stated in his affidavit that "[i]n or about the month of July 2001, [defendant] informed [plaintiff] that the goods were non-conforming, the repairs were not sufficient, and there was a breach of the contract and that [plaintiff] should either repair the goods such that they would conform or [plaintiff] should come to [defendant] and retrieve the goods as they had been rejected and return the deposit paid by [defendant]."

BUSINESS COMMUNICATIONS, INC. v. KI NETWORKS, INC.

[157 N.C. App. 710 (2003)]

Although whether a buyer revoked acceptance within a reasonable time is normally a question of fact for the jury, *Manufacturing Co.*, 40 N.C. App. at 504, 253 S.E.2d at 286, where the facts are undisputed and only one inference can be drawn therefrom, the question of reasonableness is a question of law properly left to the court. *Whitehurst v. Crisp R.V. Center, Inc.*, 86 N.C. App. 521, 358 S.E.2d 542 (1987). Additionally, "the reasonable time period may extend in certain cases beyond the time in which notice of the nonconformity has been given, as for example where the parties make attempts at adjustment." *Manufacturing Co.*, 40 N.C. App. at 503, 253 S.E.2d at 286.

Here, defendant attempted revocation of acceptance almost six months after it first communicated to plaintiff that there were problems with the Equipment. This first communication occurred the day after installation. Although it is unclear from the record who repaired the equipment, defendant had repairs made prior to 6 March 2001, when defendant claims to have encountered additional problems with the Equipment. Defendant waited until 9 June 2001, over three months from the date it discovered the additional problems and only after plaintiff demanded payment, to communicate its dissatisfaction to plaintiff. Even then, defendant failed to signify what difficulties it was having with the Equipment. Significantly, although plaintiff made multiple inquiries into what problems defendant was experiencing, the record does not affirmatively show defendant informed plaintiff of any defects in the Equipment any time after its initial communication one day after installation.

We recognize that where parties have attempted adjustment, the time allowed for revocation generally should be extended. *Id.* In the instant case, however, defendant delayed for over three months before informing plaintiff that it was experiencing problems and even then refused altogether to describe what those problems were. Although defendant need not have provided plaintiff with a detailed explanation of defects, more is necessary than a mere notification of non-conformity.[3] G.S. § 25-2-608 (official comment 5).

---

[3]. The content of the notice . . . is to be determined in this case as in others by considerations of good faith, prevention of surprise, and reasonable adjustment. More will generally be necessary than the mere notification of breach. . . . Following the general policy of this Article, the requirements of the content of notification are less stringent in the case of a non-merchant buyer.

G.S. § 25-2-608 (official comment 5).

BUSINESS COMMUNICATIONS, INC. v. KI NETWORKS, INC.

[157 N.C. App. 710 (2003)]

As a matter of law, under the foregoing facts, even accepting defendant's allegations as true and affording it the benefit of every inference, defendant failed to take the steps necessary to revoke acceptance within a reasonable time after discovering defects in the Equipment. Furthermore, because defendant failed to describe to plaintiff problems associated with the Equipment, it was unreasonable for defendant to assume that plaintiff would cure any defects.

## IV. COUNTERCLAIMS

[2] Lastly, defendant contends the trial court erred because the evidence presented at summary judgment supports unpled counterclaims, namely, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Where a litigant "fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may *by leave of court* set up the counterclaim by amendment." N.C.R. Civ. P. 13(f) (emphasis added); *see N.C. Farm Bureau Mutual Ins. Co. v. Wingler*, 110 N.C. App. 397, 404, 429 S.E.2d 759, 764, *disc. review denied*, 334 N.C. 434, 433 S.E.2d 177 (1993) (holding "leave of court is necessary to add the counterclaim to the answer by way of an amendment"). At the trial level, defendant at no time requested leave to file a counterclaim. Now, at this late stage, defendant requests in its brief and at oral argument that this Court deem its answer amended to include its proposed counterclaims and reverse the summary judgment accordingly.[4] We decline to do so.

Affirmed.

Judges McGEE and McCULLOUGH concur.

---

4. To support its contention, defendant relies solely upon two cases holding where "evidence presented at a summary judgment hearing would justify an amendment to the pleadings, we will consider the pleadings amended to conform to the evidence raised at the hearing." *Stephenson v. Warren*, 136 N.C. App. 768, 771, 525 S.E.2d 809, 811 (citing *Whitten v. AMC/Jeep, Inc.*, 292 N.C. 84, 90, 231 S.E.2d 891, 894 (1977)), *disc. review denied*, 351 N.C. 646, 543 S.E.2d 883 (2000). However, neither of these cases involves counterclaims subject to N.C.R. Civ. P. 13(f).