MARK FRANCIS RILEY AND LILLIAN CANTRELL RILEY, PLAINTIFFS-APPELLEES v. KEN WILSON FORD, INC., DEFENDANT-APPELLANT

No. 9128DC844

(Filed 2 March 1993)

1. **Automobiles and Other Vehicles §§ 254, 262 (NCI4th) — sale of automobile — breach of express and implied warranties — motion to dismiss properly denied**

    In an action for breach of express and implied warranties in the sale of an automobile, the trial court properly denied defendant dealer's Rule 41(b) motion to dismiss, since it was undisputed that defendant informed plaintiffs of a warranty; the car suffered from several defects; and plaintiffs attempted to have the car repaired within the warranty period, but to no avail.

    **Am Jur 2d, Automobiles and Highway Traffic §§ 728, 733.**

RILEY v. KEN WILSON FORD, INC.

[109 N.C. App. 163 (1993)]

2. **Automobiles and Other Vehicles § 253 (NCI4th)— sale of automobile—existence of express warranty—sufficiency of evidence**

Evidence was sufficient to support the trial court's conclusion that defendant dealer had made an express warranty to plaintiffs where it tended to show that plaintiffs were informed by defendant's sales agent that their car was subject to "a 12 month 12,000 mile warranty"; such a statement was an affirmation of fact relating to the goods which became a basis of the bargain; plaintiffs had no way of determining that such warranty was limited to the manufacturer, as there was no evidence that plaintiffs were told this was a manufacturer's warranty or that defendant excluded itself from the warranty; and plaintiffs were not even given a written copy of the warranty.

**Am Jur 2d, Sales §§ 724, 727.**

3. **Automobiles and Other Vehicles §§ 259, 260 (NCI4th)— sale of automobile—express and implied warranties—timeliness of notice of claim**

In an action for breach of express and implied warranties, a delay of just over two years between date of purchase and date of bringing an action was not unreasonable for the purposes of satisfying the notice requirement of N.C.G.S. § 25-2-607(3), since plaintiffs filed the suit well within the four-year statute of limitations applicable to sales contracts; plaintiffs fulfilled the policies behind the notice requirement by giving defendant adequate opportunities to repair their car; they repeatedly attempted to have the car repaired by defendant within the warranty period; upon defendant's refusal to perform further repairs, plaintiffs had the car towed to a dealership in another state; and plaintiffs eventually had to resort to consulting their own mechanic in an attempt to ascertain the car's various problems.

**Am Jur 2d, Automobiles and Highway Traffic §§ 728, 733.**

4. **Automobiles and Other Vehicles § 254 (NCI4th)— sale of automobile—breach of express warranty—sufficiency of evidence**

Where plaintiffs purchased a car from defendant, the oil warning light came on en route home from the dealership,

RILEY v. KEN WILSON FORD, INC.

[109 N.C. App. 163 (1993)]

and plaintiffs shortly thereafter began having problems with excessive oil and anti-freeze consumption, there was competent evidence to support the trial judge's conclusion that defects existed at the time of purchase and that defendant breached its express warranty to plaintiffs when it refused to further repair plaintiffs' car only ten months after purchase and within the 12-month warranty period.

Am Jur 2d, Automobiles and Highway Traffic §§ 728, 733.

5. **Automobiles and Other Vehicles § 255 (NCI4th) — purchase of automobile — failure to revoke acceptance**
    Though plaintiffs were entitled to revoke acceptance of a vehicle purchased from defendant, they failed to do so where they complained about the vehicle and took it in for repairs several times but they retained possession of the vehicle until after the lawsuit was filed and they were requested to return the vehicle to defendant's premises for discovery purposes; plaintiffs' complaint did not contain an allegation with regard to revocation; and the filing of the complaint itself did not constitute revocation. Therefore, plaintiffs were not entitled to damages under N.C.G.S. § 25-2-711, but were instead entitled to damages for breach of warranty under N.C.G.S. § 25-2-714 and to incidental and consequential damages under N.C.G.S. § 25-2-715.

Am Jur 2d, Automobiles and Highway Traffic §§ 728, 733.

6. **Automobiles and Other Vehicles § 259 (NCI4th) — sale of automobile — breach of warranty — damages — insufficiency of trial court's findings as to value of automobile**
    In their action for breach of warranty, plaintiffs were entitled to recover the difference between the value of the vehicle accepted "at the time and place of acceptance" and the value of the goods as warranted; however, the trial court did not make a finding of fact as to the actual value of the car, and the case must therefore be remanded to determine this value and the appropriate amount of damages.

Am Jur 2d, Sales §§ 1277, 1285.

7. **Automobiles and Other Vehicles § 259 (NCI4th)— sale of automobile—breach of express and implied warranties—seller allowed to "retain" title to vehicle—improper remedy**

> The trial court erred in an action for breach of express and implied warranties by allowing defendant seller to "retain" title and possession of the car in question, since plaintiffs had acquired title at the time of purchase; there was no rescission or revocation of acceptance; and there was thus no reason to transfer title from plaintiffs to defendant.

**Am Jur 2d, Sales §§ 1277, 1285.**

Appeal by defendant from judgment entered 19 March 1991 by Judge Shirley H. Brown in Buncombe County District Court. Heard in the Court of Appeals 12 November 1992.

*Stephen Barnwell for plaintiffs-appellees.*

*Ball, Kelley & Barden, P.A., by Stephen L. Barden, III, for defendant-appellant.*

LEWIS, Judge.

On 1 March 1989 plaintiffs filed this action for breach of express and implied warranties and requested damages in the amount of $7,762.56 arising from the purchase of a new 1986 Yugo automobile. The case was tried without a jury, and on 19 March 1991 the trial court entered judgment for plaintiffs in the amount of $9,659.56. This amount represented the cash down payment, the amount financed, the amount paid for maintenance of liability and collision insurance, and a towing charge. Defendant was allowed an offset of $447.66 for payments still owing under the installment contract and were also given title to the vehicle. Defendant appeals.

On 17 January 1987 plaintiffs purchased a new 1986 Yugo automobile from defendant. The total credit price of $7,762.56 included license, title, registration fees, credit life insurance and credit disability insurance. Pursuant to the installment sales contract, plaintiffs maintained liability and collision insurance at a cost of $154.00 per six months. At the time of purchase, defendant's agent informed plaintiffs of a standard 12,000 mile, 12 month new car warranty. According to plaintiffs, defendant did not explain this was only a manufacturer's warranty and never excluded itself as a warrantor. Plaintiffs did not receive a written copy of the warranty.

**RILEY v. KEN WILSON FORD, INC.**

[109 N.C. App. 163 (1993)]

The Yugo immediately began to give trouble; on the trip home from the dealer the oil light came on. Defendant made the necessary repair. According to plaintiffs, one month later they called defendant to complain of the same problem. Other problems included oil and coolant leaks. On 7 March 1987 defendant made repairs to the rear window washer, the speedometer cable, squeaking brakes, and adjusted the wipers. Defendant's service manager testified that plaintiffs had not complained of the oil and coolant leaks at that time. Plaintiffs continued to have problems with the oil and coolant systems requiring them to add a quart of oil weekly and a gallon of anti-freeze every other day. On 20 October 1987 plaintiffs again took the car to defendant with complaints regarding the air conditioner, oil leaks, squealing brakes, and paint problems on the hood. Defendant performed repairs including replacement of the air conditioner compressor and the head gasket. Defendant checked the cylinder head at that time and discovered it was flat. Plaintiffs continued to experience problems with excessive oil and anti-freeze consumption. When plaintiffs again contacted defendant they were informed that defendant had lost its Yugo dealership on 30 October 1987 and would no longer perform repairs on the automobile.

Plaintiffs' attorney contacted defendant and was referred to Yugo America and given a list of Yugo dealerships. Plaintiffs had the car towed to a Yugo dealership in South Carolina for further repairs, but were informed the car had no problems. On the trip home from the South Carolina dealership the car overheated and suffered loss of compression. Plaintiffs parked the Yugo and later had it towed to a mechanic who disassembled the engine and examined the car. He concluded that it had a blown head gasket, a warped cylinder head, and piston rings unsuitable for use. The car has since been moved to defendant's place of business for discovery purposes. In the opinion of both plaintiffs' mechanic and defendant's service manager the engine needs to be rebuilt. According to defendant there are parts available to repair the car. Plaintiffs have, at all times, complied with the terms of the installment contract and had only three payments remaining at the time of trial.

---

[1] Defendant assigns error to the court's failure to dismiss under Rule 41(b) of the North Carolina Rules of Civil Procedure. An involuntary dismissal under Rule 41(b) is appropriate when the

"plaintiff has shown no right to relief." N.C.G.S. § 1A-1, Rule 41(b) (1990). It is undisputed that defendant informed plaintiffs of a warranty and that the car suffered from several defects. Plaintiffs attempted to have the car repaired within the warranty period, but to no avail. Based on these facts and other evidence, it would have been improper for the trial court to find that plaintiffs had shown "no right to relief" for their breach of warranty claims. The trial court properly denied the motion.

When the trial judge sits as trier of fact she has the duty to determine the credibility of the witnesses and weigh the evidence; her findings of fact are conclusive on appeal if supported by competent evidence. *Pake v. Byrd*, 55 N.C. App. 551, 286 S.E.2d 588 (1982); *Warren v. Guttanit, Inc.*, 69 N.C. App. 103, 317 S.E.2d 5 (1984). However, a trial court's conclusions of law are reviewable de novo on appeal. *Ismael v. Goodman Toyota*, 106 N.C. App. 421, 417 S.E.2d 290 (1992).

I.  Express warranty

[2]  According to N.C.G.S. § 25-2-313, an express warranty is created when a seller makes "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes part of the basis of the bargain. . . ." N.C.G.S. § 25-2-313(1)(a) (1986). Whether the parties have actually created an express warranty is a question of fact. *Muther-Ballenger v. Griffin Electronic Consultants, Inc.*, 100 N.C. App. 505, 509, 397 S.E.2d 247, 249 (1990); *Pake*, 55 N.C. App. at 552, 286 S.E.2d at 589.

Testimony at trial indicated that plaintiffs were informed by defendant's sales agent that their car was subject to "a 12 month 12,000 mile warranty." Such a statement is certainly an affirmation of fact relating to the goods which became a basis of the bargain. Furthermore, plaintiffs had no way of determining that such warranty was limited to the manufacturer. There is no evidence that plaintiffs were told this was a manufacturer's warranty or that defendant excluded itself from the warranty. Plaintiffs were not even given a written copy of the warranty. We find the above evidence competent to support the trial court's conclusion that defendant had made an express warranty to plaintiffs.

[3]  To recover for breach of express warranty, the buyer must show compliance with his obligations and that he has taken the appropriate steps set forth in Article 2. *Stutts v. Green Ford,*

**RILEY v. KEN WILSON FORD, INC.**

[109 N.C. App. 163 (1993)]

*Inc.*, 47 N.C. App. 503, 511, 267 S.E.2d 919, 924 (1980). Article 2 provides that the buyer must notify the seller within a reasonable time of the breach. N.C.G.S. § 25-2-607(3)(a) (1986). What is a reasonable time depends upon the facts of each case and the policies underlying the notice requirement. *Maybank v. S.S. Kresge Co.*, 302 N.C. 129, 134, 273 S.E.2d 681, 684 (1981). The most important policy behind the notice requirement is to allow the seller the opportunity to cure the breach and minimize its damages. *Id.* Also, the seller must have a reasonable opportunity to discover facts and prepare for negotiation and his defense to a lawsuit. *Id.* However, if the buyer is a retail consumer and not a merchant, different standards are used to determine if reasonable notice was given; a consumer acting in good faith should not be deprived of a remedy. § 25-2-607, Official Comment 4. Thus,

> [w]hen the plaintiff is a lay consumer and notification is given to the defendant by the filing of an action within the period of the statute of limitations, and when the applicable policies behind the notice requirement have been fulfilled, . . . the plaintiff is entitled to go to the jury on the issue of seasonable notice.

*Maybank*, 302 N.C. at 136, 273 S.E.2d at 685.

There is no dispute that plaintiffs filed this suit well within the four-year statute of limitations applicable to sales contracts. N.C.G.S. § 25-2-725(1) (1986). Plaintiffs fulfilled the policies behind the notice requirement by giving defendant adequate opportunities to repair their car. They repeatedly attempted to have the car repaired by the defendant within the warranty period. Upon defendant's refusal to perform further repairs, plaintiffs had the car towed to a dealership in another state. Plaintiffs eventually had to resort to consulting their own mechanic in an attempt to ascertain the car's various problems. In *Maybank* the Court found that a delay of three years was not unreasonable in a case involving a lay consumer. 302 N.C. at 136, 273 S.E.2d at 685. Likewise, we find that a delay of just over two years was not unreasonable for the purposes of satisfying the notice requirement of section 25-2-607(3).

The burden is on the buyer to show breach. § 25-2-607(4). In a case involving a limited warranty to repair and replace defective parts, this Court held that a warrantor may be liable for breach of warranty "when it repeatedly fails within a reasonable

time to correct a defect as promised." *Stutts*, 47 N.C. App. at 511, 267 S.E.2d at 924. Other cases have held that in order to establish breach, the buyer must show that the defect existed at the time of purchase. *See Pake*, 55 N.C. App. at 554, 286 S.E.2d at 590. In a case similar to the case at hand, a purchaser of a truck noticed wiring problems affecting the lights and windshield wipers on the day of purchase. Within a month he noticed other problems in the transmission, the speedometer, and in steering. Within another month the purchaser observed, among other things, oil leakage and water overflow from the engine. The dealer repeatedly failed to repair the truck. The Court determined that directed verdicts in favor of defendant dealer and manufacturer were in error, since the evidence was sufficient to show the problems were caused by defects in the truck. The Court noted that "[t]he testimony of plaintiff and his witnesses concerning the persistent oil leak is sufficient to permit the inference that some defect in the truck was the cause, even though the precise cause has eluded discovery by [the] mechanics." *Stutts*, 47 N.C. App. at 513, 267 S.E.2d at 925.

[4] In this case, the fact that the oil warning light came on en route home from the dealership is evidence that certain problems existed at the beginning. Shortly thereafter plaintiffs began having problems with excessive oil and anti-freeze consumption. Based on these and other problems with the car, we find there was competent evidence to support the trial judge's conclusion that defects existed at the time of purchase. We therefore agree with the trial court that defendant breached its express warranty to plaintiffs when it refused to further repair plaintiffs' car only 10 months after purchase and within the 12 month warranty period. We decline to address the issue of any implied warranty of merchantability, because a finding of breach of express warranty is sufficient to entitle plaintiffs to damages.

II.   Available remedies

[5] Because defendant did not limit its warranty to any specific remedy, plaintiffs were entitled to all remedies provided for in the Uniform Commercial Code. *Williams v. Hyatt Chrysler-Plymouth, Inc.*, 48 N.C. App. 308, 316, 269 S.E.2d 184, 189, *disc. rev. denied*, 301 N.C. 406, 273 S.E.2d 451 (1980). The general measure of a buyer's damages is the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special cir-

RILEY v. KEN WILSON FORD, INC.

[109 N.C. App. 163 (1993)]

cumstances show proximate damages of a different amount." N.C.G.S. § 25-2-714(2) (1986). The buyer may also be entitled to incidental and consequential damages. § 25-2-714(3).

If, however, the buyer "rightfully rejects or justifiably revokes acceptance then with respect to any goods involved . . . the buyer may cancel and whether or not he has done so may . . . [recover] so much of the price as has been paid. . . ." N.C.G.S. § 25-2-711(1) (1986). Upon rejection or revocation, the buyer retains a security interest in the goods for any payments made and "any expenses reasonably incurred in their inspection, receipt, transportation, care and custody. . . ." § 25-2-711(3). Thus, upon revocation of acceptance the buyer may recover the full purchase price, if the goods have been fully paid for, and other reasonable expenses.

The trial court awarded plaintiffs the full purchase price based on its finding that plaintiffs successfully revoked acceptance of the Yugo. Revocation of acceptance is governed by section 25-2-608, which requires a showing of substantial impairment of value, and either a showing that (1) acceptance was made "on the reasonable assumption that [the] nonconformity would be cured and it has not been seasonably cured," or (2) acceptance occurred "without discovery of such nonconformity if [the] acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." N.C.G.S. § 25-2-608(1)(a), (b) (1986). Furthermore, revocation of acceptance must occur "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it." § 25-2-608(2).

The facts support the trial court's conclusion that the defects existing in the Yugo substantially impaired its value to the plaintiffs so that they were entitled to revoke acceptance. We find that plaintiffs' acceptance was "reasonably induced" by both the difficulty of discovery before acceptance and by defendant's assurances that the vehicle was covered under a 12 month, 12,000 mile warranty. The real question, then, is whether plaintiffs notified defendant of their revocation, and whether revocation "occurred within a reasonable time." Because we conclude that plaintiffs never notified defendant of their revocation of acceptance, we find it unnecessary to address whether any purported revocation occurred within a reasonable time.

Formal notice of revocation of acceptance is not required. *Warren v. Guttanit, Inc.,* 69 N.C. App. 103, 109, 317 S.E.2d 5, 10 (1984). Rather, "any conduct by the buyer manifesting to the seller that he is seriously dissatisfied with the goods and expects redress or satisfaction is sufficient." *Id.; Roy Burt Enterprises v. Marsh,* 328 N.C. 262, 264, 400 S.E.2d 425, 427 (1991). In *Warren,* plaintiff's "many justifiable complaints" about the defects constituted notice of revocation. 69 N.C. App. at 109, 317 S.E.2d at 10. The Court also indicated that filing of the complaint would resolve any uncertainties the seller may have had regarding revocation of acceptance. *Id.* at 110, 317 S.E.2d at 10. The complaint filed in *Warren* specifically alleged revocation of acceptance. *Id.* at 105, 317 S.E.2d at 8. In *Performance Motors, Inc. v. Allen,* 280 N.C. 385, 186 S.E.2d 161 (1972), the Court found that the combination of complaints and cessation of payments constituted sufficient notice of revocation of acceptance. 280 N.C. at 397, 186 S.E.2d at 168.

In the case at hand, plaintiffs never indicated in their complaint or elsewhere that they were proceeding on the basis of revocation of acceptance. As in *Warren,* plaintiffs complained several times to defendant and took the car in several times for repairs. However, when defendant refused to make any further repairs after October 1987, plaintiffs acquiesced and took their car to a dealership in South Carolina. When that course also proved unsuccessful, plaintiffs had the car towed to their own mechanic. Plaintiffs did not return the car to defendant until after this lawsuit was filed and they were requested to do so for discovery purposes. We note that plaintiffs continued to make all the required payments under the contract. Plaintiffs' actions, therefore, did not indicate they were revoking acceptance. Their complaint contained allegations only of breach of warranty, and merely requested the purchase price, costs of the action, and "such other and further relief as the Court may seem (sic) just and proper." We cannot conclude, as the trial court did, that filing of this complaint constituted notice of revocation. *See Danjee, Inc. v. Addressograph Multigraph Corp.,* 44 N.C. App. 626, 633, 262 S.E.2d 665, 669-70, *disc. rev. denied,* 300 N.C. 196, 269 S.E.2d 623 (1980) (revocation of acceptance not available to plaintiff where plaintiff retained and used machines and issue of revocation of acceptance not raised in pleadings or evidence).

[6] Because plaintiffs did not properly revoke their acceptance, they were not entitled to damages under section 25-2-711. Instead,

**RILEY v. KEN WILSON FORD, INC.**

[109 N.C. App. 163 (1993)]

plaintiffs are entitled to damages for breach of warranty as set forth in section 25-2-714. *See Lyon v. Shelter Resources Corp.*, 40 N.C. App. 557, 253 S.E.2d 277 (1979) (even though no rejection or revocation of acceptance can still recover for breach of warranty). They may recover the difference between the value of the goods accepted "at the time and place of acceptance," and the value of the goods as warranted as well as incidental and consequential damages. § 25-2-714(2), (3). The purchase price is strong evidence of the value of the goods as warranted. *See Warren*, 69 N.C. App. at 113, 317 S.E.2d at 12. The value of the goods accepted, however, is a more difficult determination. The trial court did not make a finding of fact as to the actual value of the car, but only found that several mechanics, including defendant's supervisor, had stated the engine needs to be rebuilt. Plaintiff testified at trial that the car was "worthless" to him, although there was other testimony that parts were available to fix the vehicle. There was no evidence, however, of the actual value of the car "at the time and place of acceptance." We must remand this case to the trial court to determine this value and the appropriate amount of damages under section 25-2-714.

Plaintiffs were also entitled to incidental and consequential damages as set forth in section 25-2-715. Incidental damages include, in pertinent part, "any . . . reasonable expenses incident to the delay or other breach." N.C.G.S. § 25-2-715(1) (1986). Consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. . . . " § 25-2-715(2)(a). We find that the trial court properly awarded plaintiffs incidental and consequential damages for maintenance of liability and collision insurance, the towing charge to South Carolina, and interest since the date of filing.

The trial court also concluded that plaintiffs were entitled to rescission of the sales contract. Rescission of a contract is not addressed in the Uniform Commercial Code, but it has been treated as revocation of acceptance in the context of a sale of goods. *See Performance Motors*, 280 N.C. at 396, 186 S.E.2d at 167. Because we have determined that plaintiffs did not properly revoke their acceptance, we disagree with the trial court's conclusion that plaintiffs are entitled to rescission of the sales contract.

[7] The trial court apparently allowed defendant to "retain" title and possession of the car based on its finding of rescission. We note, however, that defendant had no title to "retain" since plaintiffs had acquired title at the time of purchase pursuant to the installment sales contract. Without either rescission or revocation of acceptance, we see no reason to transfer title of the car from plaintiffs to defendant. We therefore find the trial court's award of title to defendant improper.

Affirmed in part, reversed in part and remanded on the issue of damages for breach of warranty.

Judges JOHNSON and COZORT concur.