<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 13-2375**

———————————

GWEN HART, on behalf of herself and all others similarly
situated; LUCILLE DRUTHER; JOSEPH DRUTHER; EDWARD WUELLNER;
JENNIFER WUELLNER,

                Plaintiffs - Appellants,

       v.

LOUISIANA-PACIFIC CORPORATION,

                Defendant - Appellee.

———————————

Appeal from the United States District Court for the Eastern
District of North Carolina, at Elizabeth City. Terrence W.
Boyle, District Judge. (2:08-cv-00047-BO)

———————————

Argued: September 16, 2015          Decided: March 10, 2016

———————————

Before SHEDD and THACKER, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED**: Gary Edward Mason, WHITFIELD, BRYSON & MASON, LLP,
Washington, D.C., for Appellants. Richard Thell Boyette,
CRANFILL SUMNER & HARTZOG LLP, Raleigh, North Carolina, for
Appellee. **ON BRIEF**: Daniel K. Bryson, Scott C. Harris, Raleigh,
North Carolina, Nicholas A. Migliaccio, WHITFIELD, BRYSON &
MASON, LLP, Washington, D.C.; Joel R. Rhine, Jean S. Martin,
RHINE MARTIN LAW FIRM, P.C., Wilmington, North Carolina; Auley
M. Crouch, III, Christopher K. Behm, BLOCK, CROUCH, KEETER, BEHM
& SAYED, LLP, Wilmington, North Carolina; Charles A. Schneider,

Martha B. Schneider, SCHNEIDER & SCHNEIDER, Washington, D.C., for Appellants. Meghan N. Knight, CRANFILL SUMNER & HARTZOG LLP, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Gwen Hart, Lucille and Joseph Druther, and Edward and Jennifer Wuellner (collectively "Appellants") own homes that were built using TrimBoard, a construction material manufactured by Louisiana-Pacific Corporation ("Appellee"). TrimBoard was sold with an express, ten-year warranty (the "Warranty") that provided a specific and limited remedy if the product failed to live up to expectations. Over time, Appellants grew dissatisfied with their TrimBoard, and filed a class action asserting claims for breach of the Warranty. They also claimed the limited remedy was unconscionable and sought compensatory damages not contemplated in the Warranty.

The district court certified the class initially, but later concluded that some class members' claims -- including Appellants' claims -- were barred by an applicable statute of repose. The district court granted summary judgment to Appellee on the time-barred claims and opted to decertify the class.

We affirm, but for slightly different reasons. In our view, Appellee is entitled to summary judgment because the Warranty's limited remedy is not unconscionable. As a result, we do not consider the district court's conclusion about the timeliness of Appellants' claims. We also affirm the district court's decision to decertify the class.

3

I.

A.

Appellants are North Carolina homeowners. Gwen Hart completed construction of her home in Dare County, North Carolina, in 1999. The Druthers and the Wuellners live in Apex, North Carolina, in houses that were completed in 2000 and 2001, respectively.

Each home was built using TrimBoard, a composite building material sold by Appellee through its subsidiary, ABTco. TrimBoard was marketed for use as exterior trim, "perfect for all trim applications, including corner board, fascia, window and door trim." J.A. 274.[1] It was sold with an express, limited, ten-year warranty that guaranteed TrimBoard's "substrate"[2] against "delamination, checking, splitting, cracking and chipping . . . for a period of ten years" from the date of installation, as long as it had been "properly stored, installed, maintained, and protected." Id. at 247; see also id. at 344 ("[TrimBoard] substrate will not delaminate, check, split, crack, or chip for a period of ten years from the date of

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[2] TrimBoard consists of a composite base to which a laminate finish is applied. The substrate is the base of the product, as opposed to the finish applied to it.

installation under normal conditions of use and exposure, provided the trim is properly stored, installed, maintained, and protected . . . .").

The Warranty also provided an exclusive, limited remedy. Before 2005, Appellee promised to "compensate the owner for repair and replacement of the affected trim no more than twice the original purchase price," if TrimBoard failed within the ten-year period. J.A. 358. After 2005, Appellee offered to "pay an amount equal to the cost . . . of replacing any such failed [TrimBoard] if failure occur[red] within ten years after the [TrimBoard] was installed." Id. at 364. Both versions of the Warranty disclaimed all other warranties, including the implied warranty of merchantability, and specifically barred the recovery of "any other damages or losses, including" incidental and consequential damages. Id. at 358, 364.

B.

Over time, the TrimBoard on Appellants' homes began splitting and cracking, absorbing moisture, and rotting and degrading. Hart, for example, was told by a contractor that all of the TrimBoard on her home was damaged and would need to be replaced at an estimated cost of close to $5,000. She made a claim under the Warranty in 2008. Appellee offered Hart $3,772.32, but she rejected that offer because it was roughly $1,300 less than the estimate she previously received. The

5

Druthers and Wuellners submitted claims under the Warranty in 2009. Appellee made offers to them as well, for $1,429.62 and $820.95, respectively. Presumably, both offers were not accepted.

After rejecting Appellee's offer, Hart filed a putative class action complaint in Dare County Superior Court on October 22, 2008. Appellee removed the case to the District Court for the Eastern District of North Carolina, after which Appellants filed their operative amended complaint on September 21, 2009. That pleading was the first to include the Druthers and Wuellners as named plaintiffs.

The amended complaint charged Appellee with "breach of express warranty," alleging TrimBoard "prematurely deteriorates, rots, swells, buckles, delaminates, absorbs water, warps and/or bulges under normal conditions," resulting in "water and structural damages[,] . . . growth of mold mildew, fungi, and insect infestation in the structures in which it is installed." J.A. 141, 153. Appellants claimed the Warranty's limited remedy provision was unconscionable because Appellee allegedly knew that TrimBoard was defective but sold it anyway. They maintained they were, therefore, entitled to recover damages otherwise excluded by the Warranty, such as compensatory damages. Alternatively, Appellants alleged that Appellee breached the Warranty by failing to "pay for 100% of the costs

6

associated with the removal of the defective [TrimBoard]." Id. at 155. As a remedy for that alternative theory of breach, they asked for "specific performance" of the "terms of [the Warranty]" as originally drafted -- that is, an amount equal to the cost of replacing defective TrimBoard.[3]

On appeal, however, we consider only whether Appellants are entitled to recover compensatory damages if they succeed in proving that the Warranty's limited remedy provision is unconscionable. Appellants' counsel made clear at oral argument that Appellants were definitively abandoning any effort to recoup the remedy provided under the terms of the Warranty as written:

> COURT: Are the plaintiffs still seeking to press their claim to enforce the warranty as written?
>
> APPELLANTS' COUNSEL: No, not as written, Your Honor.
>
> . . . .
>
> COURT: [Y]ou're not going to proceed on the warranty as-written claim?

---

[3] The amended complaint identifies the cost of replacing defective TrimBoard as the "sole remedy available for breach of th[e] [W]arranty." J.A. 155. As discussed above, however, the limited remedy available under the Warranty varied over time. The version of the Warranty in effect in 1999 when Hart's home was completed offered purchasers twice the purchase price for failed TrimBoard.

> APPELLANTS' COUNSEL: That's correct. Our claim is that there's a breach of warranty in that the limitations of the warranty limiting us to two times . . . the cost of repair is unconscionable given the circumstances and facts of this case.

See Oral Argument at 00:27-01:20, <u>Hart v. Louisiana-Pacific Corp.</u>, (2015) (No. 13-2375), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments.

C.

The parties vigorously litigated the question of unconscionability in the district court. On July 18, 2011, the district court granted Appellants' motion to certify a Rule 23(b)(3) class consisting of "[a]ll persons in the State of North Carolina who own a home, office or other building in which [TrimBoard] has been installed in the past 10 years." J.A. 1027-35. In doing so, the court reasoned that the case presented several common questions of law and fact relevant to the unconscionability issue, including: whether TrimBoard was defective; whether Appellee knew TrimBoard was defective; whether the Warranty's limited remedies were unconscionable; whether the Warranty failed of its essential purpose; and whether the class members were entitled to remedies beyond those provided by the Warranty.

Appellee thereafter filed two motions for summary judgment. The first argued that the Warranty was not

8

unconscionable, but the district court disagreed. In the district court's view, "[a] manufacturer's prior knowledge of an inherent or latent defect" could support a finding "that a contract or contract clause is both procedurally and substantively unconscionable." J.A. 2698. As a result, because there was a genuine dispute of fact about whether Appellee knew TrimBoard was defective when it issued the Warranty, the district court reasoned it was too soon to decide whether the Warranty was unconscionable.

Shortly before trial, Appellee again moved for summary judgment, arguing Appellants' claims were barred by a six-year statute of repose. This time the district court agreed, granting Appellee summary judgment because it was "undisputed that this suit was filed beyond the six-year statute of repose applicable to the claims of the named plaintiffs." J.A. 3246. The district court then elected to decertify the class, because, in its view, determining which class members' claims were subject to the statute of repose "would necessarily require an individualized determination" that would "destroy typicality, . . . predominance, [and] otherwise foreclose class certification." Id. at 3247. Appellants timely noted this appeal, challenging both the grant of summary judgment and the district court's decision to dissolve the class.

II.

We consider first whether the district court properly awarded summary judgment to Appellee. In doing so, we review the district court's legal conclusions de novo, Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 792 F.3d 520, 523 (4th Cir. 2015), accepting Appellants' evidence as true and drawing all justifiable inferences in their favor, Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam). We next review the district court's decision to decertify the class for abuse of discretion. See EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014). And we may, of course, affirm on alternate grounds apparent in the record. See Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 786-87 (4th Cir. 2012).

III.

A.

The district court held Appellants' claims were barred by article 5, section 1-50(a)(5) of the North Carolina General Statutes, which provides:

> No action to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property shall be brought more than six years from the later of the specific last act or omission of the defendant giving rise to the cause of action or substantial completion of the improvement.

10

N.C. Gen. Stat. § 1-50(a)(5). It is undisputed that Hart finished building her home in 1999, but did not file the initial class action complaint in this matter until 2008, placing her claims well outside the repose period. The same is true for the Druthers and Wuellners, whose homes were completed in 2000 and 2001, respectively. On the other hand, it is equally plain that Appellants did file their claims within the Warranty period; that is, within ten years of the TrimBoard being installed on their properties. The case thus presents a knotty issue: If goods are under warranty when the repose period runs out, may a buyer still seek redress through a claim for breach of the warranty?

As it happens, the North Carolina courts issued two opinions analyzing that very question while this litigation was unfolding. In Christie v. Hartley Construction, Inc. ("Christie I"), 745 S.E.2d 60 (N.C. Ct. App. 2013), homeowners sued Grailcoat WorldWide, LLC ("Grailcoat"), the manufacturer of a waterproofing sealant called SuperFlex, seeking damages for breach of warranty. Id. at 61. In response, Grailcoat moved for summary judgment, arguing that the plaintiffs' claims were barred by a six-year statute of repose despite the fact that SuperFlex was "fully warranted" for twenty years. See id. at 61, 63. The Court of Appeals of North Carolina agreed with Grailcoat, holding, "a plaintiff whose action is not filed

11

within the time set forth in the statute of repose has no cause of action for damages," despite the existence of an extended warranty. Id. at 63.

The district court in this case diligently applied Christie I, and concluded Appellants' claims were likewise untimely. But while this appeal was pending, a parallel appeal of Christie I was working its way up the ladder in state court. And, on December 19, 2014, the North Carolina Supreme Court reversed Christie I, holding, "by contracting for a warranty term that exceed[s] the repose period, [a seller] waive[s] the protections provided by that statute and is bound by its agreement." Christie v. Hartley Constr., Inc. ("Christie II"), 766 S.E.2d 283, 284 (N.C. 2014).

The parties disagree sharply over the proper interpretation of Christie II and its implications for this case. Appellee concedes it is bound by the Warranty, but maintains it agreed to extend its liability beyond the repose period only on the limited basis set forth therein. Thus, Appellee argues, if Appellants seek "relief beyond that to which [Appellee] has agreed" and do so "outside the statute of repose, . . . the rationale for the [Christie II] exception does not apply, and the statute of repose bars the claim." Appellee's Supp. Br. 9.

12

In contrast, Appellants argue that the statute of repose loses all force if a claim for breach of warranty is made within the Warranty period. See Appellants' Supp. Br. 7 ("[Appellee] . . . willingly agreed to waive the six year statute of repose and [Christie II] makes clear that the statute of repose is inapplicable -- for all purposes and with respect to all provisions."). In their view, the entirety of the Warranty is fair game; if Appellee is entitled to enforce the limited remedy provision, then Appellants argue they should be entitled to attack its conscionability and, if successful, invalidate it.

We do not need to resolve the parties' conflicting interpretations of Christie II in this case, however, because even assuming Appellants are entitled to litigate the question of unconscionability after the statute of repose has elapsed, we conclude the Warranty at issue here is not unconscionable.

A court may refuse to enforce a contract for the sale of goods, or any clause therein, if it finds the agreement was unconscionable as a matter of law when it was made. See N.C. Gen. Stat. § 25-2-302. In North Carolina, a party asserting unconscionability must demonstrate that the contract or term is both procedurally and substantively unconscionable. See Rite Color Chem. Co. v. Velvet Textile Co., 411 S.E.2d 645, 648-49 (N.C. Ct. App. 1992) (discussing unconscionability under § 25-2-

13

302); see also Tillman v. Commercial Credit Loans, Inc., 655 S.E.2d 362, 370 (N.C. 2008) (discussing unconscionability generally). "[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." Tillman, 655 S.E.2d at 370 (quoting Rite Color). "Substantive unconscionability . . . refers to harsh, one-sided, and oppressive contract terms." Id. Ultimately, the question, after considering "all the facts and circumstances of a particular case," is whether the contract is "so one-sided that the contracting party is denied any opportunity for a meaningful choice" and whether the "terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Brenner v. Little Red Sch. House Ltd., 274 S.E.2d 206, 210 (N.C. 1981).

Appellants argued, and the district court agreed, that the unconscionability question turned on whether and to what extent Appellee knew that TrimBoard was defective before offering it for sale under the terms of the Warranty. Citing our decision in Carlson v. General Motors Corp., 883 F.2d 287, 296 (4th Cir. 1989), the district court reasoned "[a] manufacturer's prior knowledge of an inherent or latent defect can serve as a basis upon which to find that a contract or contract clause is both procedurally and substantively

14

unconscionable." J.A. 2698. As a result, because Appellants "proffered evidence that TrimBoard . . . is an unsuitable material for use as exterior siding[, and that it] . . . fails within its expected service life," the district court found summary judgment in Appellee's favor inappropriate.

We assume without deciding that Appellee's alleged knowledge of TrimBoard's ineffectiveness may be evidence of the kind of disparity in bargaining power and unfair surprise often indicative of procedural unconscionability. See Carlson, 883 F.2d at 296 ("When a manufacturer is aware that its product is inherently defective, but the buyer has no notice of [or] ability to detect the problem, there is perforce a substantial disparity in the parties' relative bargaining power." (alteration in the original; internal quotation marks omitted)). But we fail to see, at least under these circumstances, how advanced knowledge could have established substantive unconscionability.

In Carlson, we found advanced knowledge of a latent defect probative on the issue of substantive unconscionability because it was alleged that the seller abused its superior knowledge to unfairly limit the duration of an implied warranty of merchantability. See Carlson, 883 F.2d at 295-96. As we explained, "Evidence of the knowledge of [a] stronger party that the weaker party will be unable to receive substantial benefits

15

from the contract . . . should in most cases contribute to a finding of unconscionability." Id. at 296 (internal quotation marks omitted). The relevant question, in other words, was whether one party used its superior knowledge to impose a contractual term that was harsh, one-sided, or oppressive. And because the plaintiffs in that case discovered latent defects only after the duration of the defendant's limited warranty had elapsed, we held that the facts construed in the light most favorable to the plaintiffs could withstand a motion to dismiss. See Carlson, 883 F.2d at 296 ("[T]he district court erred by dismissing the claims of those named plaintiffs who alleged that they first encountered substantial difficulties with their . . . cars only after the purported expiration of all express and implied warranties.").

But we think, for several reasons, that Carlson provides scant support for the proposition that the limited remedy in this case is substantively unconscionable. First, the case is plainly distinguishable on its facts. There, consumers alleged that a manufacturer concealed knowledge of a latent defect, imposed a durational limitation on its warranty, and that the defect only manifested itself after the limitation had lapsed, effectively leaving the consumers with no remedy at all. Here, by contrast, Appellants' evidence tends to show that Appellee knew TrimBoard would, on average, fail within nine

16

years, yet still warranted the product for ten years and offered twice the purchase price or, after 2005, the cost of replacement as a remedy. Indeed, each of the Appellants in this case discovered the alleged defect in their TrimBoard within the Warranty period, made a claim, and received an offer of compensation from Appellee.

Moreover, we also do not read Carlson for the broad proposition that the terms of a warranty are necessarily substantively unconscionable solely because one party conceals certain information during the bargaining process. Ample authority supports this common-sense distinction. See, e.g., McCabe v. Daimler AG, 948 F. Supp. 2d 1347, 1358 (N.D. Ga. 2013) ("Plaintiffs have failed to identify any authority from the relevant jurisdictions supporting their position that a warranty's time and mileage limitations may be rendered unconscionable simply because a manufacturer knowingly sells a defective product. Instead, the cases upon which they rely show that additional allegations are necessary to support their theory of unconscionability." (discussing Georgia, California, Florida, Illinois, and Virginia versions of § 2-302 of the Uniform Commercial Code)); Weske v. Samsung Elecs., Am., Inc., 934 F. Supp. 2d 698, 705-06 (D.N.J. 2013) ("[F]ailing to disclose a known defect does not, by itself, make a warranty unconscionable." (construing Minnesota law)); Liparoto Const.,

17

Inc. v. Gen. Shale Brick, Inc., 772 N.W.2d 801, 805-06 (Mich. Ct. App. 2009) ("Plaintiff also failed to establish that the one-year limitations provision was substantively unconscionable because the defect was not detectable for several months. The record reveals that the bricks were shipped in December 2004 and installed in early 2005. The record also shows that plaintiff became aware of the problem by summer 2005. Consequently, there is no support for plaintiff's argument that the alleged defect remained undetectable until it was too late to bring an action for relief. Under these circumstances, plaintiff has not shown that the one-year limitations provision shocks the conscience.").

Instead, like Carlson, cases finding substantive unconscionability based on an inherent defect in a warranted product require some link between the defect and the objective unfairness of the warranty terms. See, e.g., DJ Coleman, Inc. v. Nufarm Americas, Inc., 693 F. Supp. 2d 1055, 1073 (D.N.D. 2010) ("The clause at issue here would limit DJ Coleman's remedy for a breach of an express warranty to the purchase price of Assert® or the replacement of the product. The Court finds that the limitation of remedies provision is substantively unconscionable. [T]he farmer is required to expend large sums of money before any defect [ ] is noticeable, and once a defect is found an entire year's crop might be worthless. Once the

18

crop has failed, the farmer's only recourse is monetary compensation to cover his lost profit and expenditures; replacement and repair are not viable options." (internal quotation marks omitted; alterations in the original)); Lennar Homes, Inc. v. Masonite Corp., 32 F. Supp. 2d 396, 401 (E.D. La. 1998) ("The Court agrees that shipping a product with a known latent defect may infect a limitation with unconscionability. This limitation is not prima facie unconscionable, but Lennar has sufficiently raised material issues of fact regarding Masonite's knowledge of defects to preclude summary judgment." (citation omitted; emphasis supplied)); Majors v. Kalo Labs., Inc., 407 F. Supp. 20, 22-23 (M.D. Ala. 1975) ("In summary, the situation presented here is one of an alleged latent defect in a product whose effectiveness was known by its manufacturer to be questionable and an exclusion which has the effect of foreclosing any recovery by a farmer for large and foreseeable consequential damages for crop failure. This is, therefore, a proper case for a determination that the attempted exclusion is unconscionable, and such is the opinion of this Court.").

Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614 (M.D.N.C. 2006), another case on which Appellants principally rely, illustrates the difference. There, as in Carlson, plaintiffs challenged a durational limitation in a warranty, alleging that the manufacturer concealed information about a

19

latent defect.  The court acknowledged the "broad, nearly universally accepted proposition that a latent vehicle defect known to the manufacturer at the time of sale that does not manifest itself until after expiration of the express warranty does not, in and of itself, give rise to a breach of express warranty claim."  Id. at 621.  But, critically, the plaintiff in Bussian, as in Carlson, alleged "that the limits of the express warranty [were] unconscionable because" the latent defect only manifested itself after the warranty had lapsed, leaving the plaintiff with no warranty remedy at all.  See id.  at 617-18, 621-22.  As the Appellants' own experience demonstrates, that is not the factual scenario we are confronted with here.

Even if we read Carlson as broadly as Appellants would like, we would not be bound by it because Carlson did not interpret North Carolina law which, as a federal court sitting in diversity, we must apply.  In this case, Appellants allege that Appellee knew TrimBoard was likely to fail within nine years, yet still agreed to cover its product for ten years.  And although the Warranty disclaimed consequential damages, Appellee nevertheless offered to pay to replace defective TrimBoard or refund twice the purchase price paid for TrimBoard that failed within ten years of purchase.  Our task, then, is to assess whether North Carolina courts would consider those terms substantively unconscionable because they are "so oppressive

20

that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." Wilner v. Cedars of Chapel Hill, LLC, 773 S.E.2d 333, 337 (N.C. Ct. App. 2015) (quoting Brenner, 274 S.E.2d at 210). We predict that North Carolina courts would not reach that conclusion.

To begin with, contractual provisions disclaiming consequential damages for economic loss are authorized under state law and not presumptively unconscionable. See N.C. Gen. Stat. § 25-2-719(3). And a disclaimer of consequential damages can be valid even if a warranty's limited remedy proves less than ideal. See Stutts v. Green Ford, Inc., 267 S.E.2d 919, 926 (N.C. Ct. App. 1980) (upholding a limitation on consequential damages even though plaintiff was entitled to recover cover damages for a vehicle that could not adequately be repaired, as contemplated by the warranty). State law also permits remedies, similar to the ones at issue here, that limit a buyer's recovery to the purchase of replacement goods or the repayment of the purchase price, see id. § 25-2-719(1)(a), and such remedies have been upheld in cases where the consumer suffers only economic harms. See, e.g., Byrd Motor Lines, Inc. v. Dunlop Tire & Rubber Corp., 304 S.E.2d 773, 776-77 (N.C. Ct. App. 1983) (limited warranty providing for purchase of replacement tires was not unconscionable, even though tire failure was alleged to have caused accidents resulting in damage to plaintiff's

21

trucks); <u>Billings v. Joseph Harris Co.</u>, 220 S.E.2d 361, 366 (N.C. Ct. App. 1975) (limited warranty remedy consisting of return of the purchase price of seeds valid despite farmer's loss of crops "given the inherent element of risk present in all agricultural enterprises").

If the terms of the limited remedy are not per se or categorically unconscionable, our next task is to measure their fairness in the context of this case. To do so it is useful to consider the default remedies that would otherwise have been available to Appellant in the absence of the Warranty's limitations. The standard measure of damages for breach of warranty in North Carolina is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted," N.C. Gen. Stat. Ann. § 25-2-714, plus incidental and consequential damages "[i]n a proper case," <u>id.</u> § 25-2-714(3) and -715. And when calculating damages under § 25-2-714, "[t]he purchase price is strong evidence of the value of the goods as warranted." <u>Riley v. Ken Wilson Ford, Inc.</u>, 173, 426 S.E.2d 717, 723 (N.C. Ct. App. 1993).

So here, assuming the value of the defective TrimBoard is zero, Appellants' damages (the difference between the value of the goods as warranted and the value of the defective goods accepted) would have been equal to the TrimBoard's original

22

purchase price. The Warranty remedy applicable to Appellants'
TrimBoard, by comparison, provides twice that amount. And even
if we further assume in the absence of the Warranty's
limitations that Appellants could have recovered some
consequential and incidental damages, such as "expenses or
commissions in connection with effecting cover" or "injury to
. . . property proximately resulting from [the] breach," id.
§ 25-2-715(1) and (2)(b), we still cannot say that North
Carolina courts would find the Warranty oppressively one-sided
in every case. Hart, for example, received an offer under the
Warranty equal to roughly 75% of the lone estimate she obtained.
That disparity is a far cry from the circumstances in which
other courts have found limited remedies unconscionable. See,
e.g., Kalo Labs., Inc., 407 F. Supp. at 22-23 (holding that
remedy limited to return of purchase price was unconscionable
where seed manufacturer allegedly knew of defect in seed that
caused farmer to lose his entire crop, the purchase price remedy
was 30 cents an acre, and the farmer's losses were between $90
and $100 per acre).

Finally, by offering a ten-year warranty, Appellee
granted Appellants a limited remedy in years seven through ten
that would otherwise have been extinguished after the expiration
of the repose period. If Appellee had not offered a ten-year
warranty, purchasers like Appellants who filed suit beyond the

23

six-year repose period would have had no remedy at all. Instead, under the terms of the Warranty, Appellants had the chance (before they abandoned it) to recover twice what they paid for the defective TrimBoard. That may not be the remedy Appellants want, but it is substantially more valuable than nothing at all. And that additional benefit must be considered in measuring the Warranty's overall fairness.

In sum, assuming the truth of Appellants' evidence, Appellee knew TrimBoard was likely to fail within nine years, but nevertheless agreed to warrant the product for ten years and offered purchasers twice their money back or the cost of replacement if and when their TrimBoard did fail. The Warranty also extended that remedy beyond the point that Appellee's liability would otherwise have been extinguished by the statute of repose. We doubt that North Carolina courts would find that bargain harsh, oppressive, or one-sided. See Harbison v. Louisiana-Pacific Corp., 602 F. App'x 884, 887 (3d Cir. 2015) (holding, in a similar case involving TrimBoard, "because the warranty . . . provides [consumers] with a benefit [they] would not otherwise have, the damages limitation [is] not unconscionable"). As a result, Appellee's alleged advanced knowledge about TrimBoard's ineffectiveness alone will not sustain a finding under North Carolina law that the Warranty's limited remedy is unconscionable. Cf. Rite Color, 411 S.E.2d at

24

649-50 (contract not substantively unconscionable where price charged was higher than price available from other sellers, making it irrelevant that the trial court did not assess allegations of fraud bearing on potential procedural unconscionability).

Accordingly, in light of the fact that Appellants have abandoned any attempts to recover the limited remedy provided by the Warranty as written and proceed only on the theory that the Warranty is unconscionable, we affirm the district court's grant of summary judgment.

B.

We now consider the district court's decision to decertify the class. Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). To obtain class certification, plaintiffs bear the burden of showing

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

25

Fed. R. Civ. P. 23(a). In addition to meeting those requirements of numerosity, commonality, typicality, and adequacy, the proposed class must also satisfy at least one of the requirements of Rule 23(b).

Here, Appellants sought class certification pursuant to Rule 23(b)(3), which requires a showing that "(1) common questions of law or fact . . . predominate over any questions affecting only individual class members; and (2) proceeding as a class [is] superior to other available methods of litigation." EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014); see also Fed. R. Civ. P. 23(b). The district court initially certified a class consisting of "[a]ll persons in the State of North Carolina who own a home, office or other building in which [TrimBoard] has been installed in the past ten years." J.A. 1036. But the district court later concluded decertification was appropriate because the statute of repose issue undercut typicality, among other things. We find no abuse of discretion in that decision, particularly in light of our decision concerning the issue of unconscionability.

As noted, Rule 23(b)(3) requires common questions of law or fact to predominate over any questions affecting only individual class members. Almost all of the predominate questions identified by the district court centered on the issue of unconscionability, including "[w]hether Trimboard is

defective[,] . . . [w]hether [Appellee] knew or should have known of the defect[,] . . . [w]hether [Appellee's] limitations on the express warranty [we]re unconscionable[,] [w]hether the express warranty fail[ed] of its essential purpose," and whether Appellants were entitled to compensatory damages beyond the Warranty's limited remedy. J.A. 1032. Our conclusion that the Warranty's limited remedy provisions are not unconscionable, therefore, calls into serious doubt the central attributes of the class initially certified by the district court.

That aside, Rule 23(a)(3) requires "the claims . . . of the representative parties" to be "typical of the claims . . . of the class." As noted, Appellee provided different versions of the Warranty with different remedy provisions for TrimBoard sold before and after 2005. The class originally certified by the district court took no account of this distinction and, although the problem may ultimately be addressed by the creation of subclasses, this multiplicity of warranties undermines typicality. As we have previously observed, "plaintiffs simply cannot advance a single collective breach of contract action on the basis of multiple different contracts." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998). The same logic holds in this context and provides additional support for the decertification order.

Accordingly, we affirm the district court's decision to decertify the class.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.